D. EDWARD HAYS, #162507
ehays@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
DEVAN DE LOS REYES, #355913
ddelosreyes@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Debtor,
PALO VERDE HEALTHCARE DISTRICT

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re | Case No. 6:25-bk-17084-SY |
|---|---|
| | Chapter 9 |
| PALO VERDE HEALTHCARE DISTRICT, | MOTION FOR ORDER SETTING CASE STATUS CONFERENCE; APPROVING FORM AND SUFFICIENCY OF NOTICE UNDER 11 U.S.C. § 923; AND SETTING DEADLINE TO FILE OBJECTIONS TO PETITION, AND PROCEDURES FOR DETERMINATION OF ELIGIBILITY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SANDRA J. ANAYA AND D. EDWARD HAYS IN SUPPORT |
| Debtor. | |
| | Hearing (specially set by the Court): |
| | Date:       October 8, 2025 |
| | Time:       1:30 p.m. |
| | Ctrm:       302 |
| | Location:  United States Bankruptcy Court |
| | 3420 Twelfth Street |
| | Riverside, CA 92501 |

TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE, THE

OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Palo Verde Healthcare District ("Debtor"), a special hospital district established pursuant to

California Health & Safety Code § 32000 *et seq.*, which operates the Palo Verde Hospital located in

Blythe, California, files this motion and respectfully represents as follows:

## 1.     Summary of Argument

In a Chapter 9 bankruptcy case, a threshold question of whether the debtor is eligible to be a debtor under 11 U.S.C. § 109(c) may arise. Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure, however, provide a deadline for such a determination. Instead, the Code provides that "[i]f the petition is not dismissed under subsection (c) of this section, the court shall order relief under this chapter notwithstanding section 301(b)." 11 U.S.C. § 921(d). Before the Debtor incurs the costs of engaging in the preparation of its plan of adjustment of debts under 11 U.S.C. § 941, it respectfully requests that the Court set a case status conference and enter a scheduling order establishing procedures and deadlines for the filing of any eligibility objections.

## 2.     Statement of Facts

On January 27, 1948, the Palo Verde Healthcare District (the Debtor) was formed as a special hospital district which officially encompasses approximately 1,000 square miles of the easternmost region of Riverside County, extending to the California-Arizona border.

Debtor owns and operates the Palo Verde Hospital ("Hospital"), an accredited Critical Access Hospital located at 250 N. 1st Street, Blythe, CA.[1] A detailed Municipal Service Review ("MSR") of the Debtor prepared by the Riverside Local Agency Formation Commission ("LAFCO"),[2] dated September 25, 2025, is attached as Exhibit "2" to the Declaration of Sandra Anaya ("Anaya Declaration"). The MSR contains detailed information about the Debtor from the perspective of LAFCO. Compared to other healthcare districts overseen by the Riverside LAFCO, which are the Desert Healthcare District and the San Gorgonio Memorial Healthcare District, the Debtor has a much smaller population that it serves.[3] The Debtor has prepared a response to the MSR, which is in the form of a staff report dated October 1, 2025. A true and correct copy of the Debtor's response to the MSR is attached to the Anaya Declaration as Exhibit "3."

---

[1] According to the 2020 census, the population of Blythe was 18,317.
[2] Local Agency Formation Commissions (LAFCOs) are state-mandated regulatory agencies established to help implement State policy of encouraging orderly growth and development through the regulation of local public agency boundaries.
[3] *See generally* Riverside LAFCO Healthcare Districts MSR and SOI Update, November 2, 2020, *available at*: https://lafco.org/wp-content/uploads/documents/msr-2018-2022/Riverside%20HC%20MSR%20FINAL.pdf

1    There are no other hospitals in the state within 100 miles of the Debtor's Hospital.

2    The Debtor has been in financial trouble for a number of years. But, over the past

3  approximate five-year period, it has repeatedly received grants and more than $9 million in loans

4  from the California Health Facilities Financing Authority ("CHFFA"), which is the Debtor's largest

5  creditor claim. Debtor has no outstanding bond liabilities.

6    In May 2025, the Debtor's local banking partner, Provident Bank, terminated its line of credit

7  and setoff what it was owed from funds on deposit in the Debtor's bank account. Without a line of

8  credit and with substantially less available cash after the setoff, the Debtor relies on collecting its

9  receivables in order to fund its ongoing operational expenses. After drastic scale backs to its services

10  in the past fiscal year, the Debtor has reduced its monthly operational expenses to approximately $1

11  million, and only currently provides 24/7 emergency room services, and no inpatient or long-term

12  care. The emergency room operations have a total of seven beds.

13    Additionally, the hospital building that the Debtor owns is not currently in compliance with

14  seismic safety building standards for licensed acute-care hospitals under California law. The

15  deadline to improve the structure has not yet passed. The structures comprising the Hospital will

16  require significant capital improvements in order to meet seismic safety standards; however, due to

17  the Debtor's dire financial condition, the exact cost of these improvements is not currently known

18  and there is no expectation that the improvements could be made without outside assistance.

19    Due to its liquidity crunch, the Debtor has not been able to pay all of its debts as they come

20  due, and is reserving as much of its operating cash as possible in order to continue to fund payroll

21  and essential goods and services to continue to provide emergency room care for its service area.

22  Because the Debtor does not have a substantial cash reserve, if it paid all of its outstanding vendors

23  and service debts, it would immediately run out of operating cash.

24    In order to preserve its current operations and maintain, to the greatest extent financially

25  feasible, a sufficient standard of patient care, the board of directors for the Debtor authorized, in a

26  majority vote, this Chapter 9 bankruptcy case to be filed. Three directors voted in favor of the filing,

27  one voted against, and one abstained.

28    The bankruptcy petition was filed on September 30, 2025.

MOTION TO SET CASE STATUS CONFERENCE AND SET DEADLINE AND PROCEDURES RE: ELIGIBILITY

1    On October 1, 2025, as Dk. No. 4, an order by the chief judge of the Ninth Circuit was

2  docketed, designating the Hon. Scott H. Yun as the bankruptcy judge to preside over the case

3  pursuant to 11 U.S.C. § 921(b).

4  **3.    Legal Argument**

5  **A.    Section 921 provides that the Court must make a "gateway"**

6  **determination of eligibility in a Chapter 9 case.**

7    "After any objection to the petition, the court, after notice and a hearing, may dismiss the

8  petition if the debtor did not file the petition in good faith or if the petition does not meet the

9  requirements of this title." 11 U.S.C. § 921(c). "If the petition is not dismissed under subsection (c)

10  of this section, the court shall order relief under this chapter notwithstanding section 301(b)." 11

11  U.S.C. § 921(d). The bankruptcy court's role is to determine whether a debtor may be a debtor under

12  Chapter 9, and to satisfy the "gateway" provision Section 109(c). *See Puerto Rico v. Franklin*

13  *California Tax-Free Trust*, 579 U.S. 115, 122 (2016); *see, e.g., In re City of Vallejo*, 408 B.R. 280,

14  289 (B.A.P. 9th Cir. 2009).

15    "'The burden of establishing eligibility under § 109(c) is on the debtor.'" *Id.* (quoting *In re*

16  *Valley Health Systems*, 383 B.R. 156, 161 (Bankr. C.D. Cal. 2008). "The procedure for resolving the

17  eligibility question resembles ordinary federal civil litigation. The petition and supporting materials

18  function as the equivalent of a complaint and objections to the petition as the answer." *In re City of*

19  *Stockton*, 475 B.R. 720, 726 (Bankr. E.D. Cal. 2012). And, "if all of the eligibility criteria set forth in

20  § 109(c)… are satisfied, it follows that there should be a strong presumption in favor of chapter 9

21  relief." *In re City of Stockton*, 493 B.R. 772, 794 (Bankr. E.D. Cal. 2013).

22    Appended to the Debtor's petition in this case is a brief statement of eligibility under 11

23  U.S.C. § 109(c) which contains a short and plain statement of the Debtor's qualifications under

24  Section 109(c). It is unknown at this time whether any entity or creditor(s) will file an objection to

25  eligibility for the Debtor, including that the determination to file the Chapter 9 case was discussed in

26  a public hearing by the Debtor's board of directors, and after the public hearing, the board authorized

27  the filing of the case. Concerns from the community at that hearing focused on opposing the closure

28

1  of the Hospital, and fears that the filing of a bankruptcy case would mean that the Hospital would

2  close.

### B.    Section 923 provides that notice of the commencement of the case shall be made by publication "as the court designates."

"There shall be given notice of the commencement of a case under this chapter, notice of an order for relief under this chapter, and notice of the dismissal of a case under this chapter. Such notice shall also be published at least once a week for three successive weeks in at least one newspaper of general circulation published within the district in which the case is commenced, and in such other newspaper having a general circulation among bond dealers and bondholders as the court designates." 11 U.S.C. § 923. The court has authority to approve the form and sufficiency of the notices given under this section. *See, e.g., Valley Health*, 383 B.R. at 159 n.6; *see, e.g., In re City of Harrisburg*, 465 B.R. 744, 750 (Bankr. M.D. Pa. 2011); *see also, e.g., In re East Shoshone Hospital District*, 226 B.R. 430, 433 (Bankr. D. Idaho 1998).

Debtor is prepared to immediately publish notice of the bankruptcy case in substantially the form attached as to the Declaration of D. Edward Hays as Exhibit "4" in local publications in the Central District of California which have circulation in the service area of the hospital district. Debtor suggests the Desert Sun, which has significant circulation in Riverside County and has previously covered the Chapter 9 filing,[4] and the Palo Verde Valley Times, which is the local news publication in Blythe.[5]

Because the Debtor operates a hospital, a large number of potential creditors and parties in interest in this case entitled to notice will include current and former patients of the Debtor whose personal information is protected under the Health Insurance Portability and Accountability Act

---

[4] https://www.desertsun.com/story/news/health/2025/09/27/palo-verde-hospital-in-blythe-considers-bankruptcy-riverside-county-lafco-dissolves-district/86371062007/ (paywalled, text is also available at Yahoo news: https://www.yahoo.com/news/articles/blythes-palo-verde-hospital-considers-143152518.html); story covering the bankruptcy filing: https://www.desertsun.com/story/news/health/2025/10/01/palo-verde-healthcare-district-files-for-bankruptcy-notifies-state-of-blythe-hospital-closure/86467143007/ (paywalled).

[5] https://www.pvvt.com/blythe_news/palo-verde-healthcare-district-board-authorizes-chapter-9-filing-to-restructure-finances/article_5e893a71-1f56-4d87-b025-14994479b2a6.html (paywalled)

MOTION TO SET CASE STATUS CONFERENCE AND SET DEADLINE AND PROCEDURES RE: ELIGIBILITY

("HIPAA"). In order to safeguard patient identities and personally identifiable information, the Debtor will be employing a claims agent and anticipates shortly filing a separate motion to safeguard patient information in coordination with the claims agent. Until such procedures are approved, the Debtor is assembling the list of non-patient creditors to be provided notice, and can also provide the notice of the case by publication. Although Section 923 requires a minimum publication period of three successive weeks, Debtor suggests that the notice of the bankruptcy case be published for four successive weeks, once a week. Notice of the case has also been provided via press release and will be posted publicly.

### C. For the orderly administration of this case, the Court should set a case status conference and enter an Order establishing a deadline for the filing of objections to eligibility.

Sections 921(c) and (d) permit the Court to enter an order for relief if any objections are neither filed nor sustained. To effectuate such a determination, the Court should establish a deadline and a procedure for the filing of any objections. Under Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

In order to facilitate the orderly commencement and prosecution of this case, the Debtor respectfully requests that the Court schedule an initial case status conference, and enter a scheduling order establishing a deadline to file objections to eligibility under Section 109(c), establishing a deadline to serve notice of such deadline and any other procedures on creditors and parties in interest, and approving the form of such notice. Subsequently, if an objection is filed by the deadline, the Court may set a further briefing schedule. Otherwise, in the absence of a timely objection to the petition, the Court may enter the order for relief after sufficient notice has been provided to all creditors and parties in interest.

Debtor suggests the following tentative procedures and deadlines:

- A regular status conference (starting with the October 8, 2025 hearing date as an initial status conference) as the Court deems necessary, with a status report to be filed by the Debtor prior to the status conference. Regular motions may be filed to be heard with the

status conference date.

- A deadline of October 17, 2025, for the Debtor to file its list of non-patient creditors and serve notice of the bankruptcy case to all non-patient creditors.

- A deadline of November 7, 2025, for objections to eligibility to be filed by any creditor or party in interest.

- A deadline of November 21, 2025, for the Debtor to file a reply to any objections to eligibility.

- A hearing on December 3, 2025, at 1:30 p.m., or another date and time that the Court designates, on *summarily* resolving any challenges to eligibility. If further discovery or factfinding is necessary for the Court to resolve any challenges to eligibility, this date may be treated as a status conference to set a discovery schedule and an evidentiary hearing on any contested issues of fact that require further factfinding.

**4.    Conclusion**

For the orderly administration of this Chapter 9 case, Debtor requests that this Court grant this Motion and enter an order:

1.    Granting this Motion;

2.    Pursuant to 11 U.S.C. § 923, approving the form of publication notice attached to the Declaration of D. Edward Hays as Exhibit "4" and deeming the publication of notice in *The Desert Sun* and *The Palo Verde Valley Times* once a week, for four consecutive weeks, as sufficient to satisfy the demands of due process;

3.    Setting a case status conference and the following deadlines:

    a.    A deadline of October 17, 2025, for the Debtor to file its list of non-patient creditors and serve notice of the bankruptcy case to all non-patient creditors.

    b.    A deadline of November 7, 2025, for objections to eligibility to be filed by any creditor or party in interest.

    c.    A deadline of November 21, 2025, for the Debtor to file a reply to any objections to eligibility.

/ / /

1         d. A hearing on December 3, 2025, at 1:30 p.m., or another date and time that the

2         Court designates, on *summarily* resolving any challenges to eligibility. If further

3         discovery or factfinding is necessary for the Court to resolve any challenges to

4         eligibility, this date may be treated as a status conference to set a discovery

5         schedule and an evidentiary hearing on any contested issues of fact that require

6         further factfinding; and

7     4. And granting to Debtor such other and further relief as the Court may deem just and

8 proper.

9

10   DATED: October 2, 2025        MARSHACK HAYS WOOD LLP

11

12                  By: */s/ D. Edward Hays*
                          D. EDWARD HAYS

13                          TINHO MANG
                          DEVAN DE LOS REYES

14                          Attorneys for Debtor,
                          PALO VERDE HEALTHCARE DISTRICT, a

15                          Special Hospital District

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SET CASE STATUS CONFERENCE AND SET DEADLINE AND PROCEDURES RE: ELIGIBILITY

# Declaration of Sandra J. Anaya

I, SANDRA J. ANAYA, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am the chief executive officer of Palo Verde Healthcare District, a special hospital district ("Debtor"). I have been the chief executive officer of the Debtor since 2013. I have a M.S. in Healthcare Administration and am currently a licensed registered nurse in the State of California. A copy of my professional resume with my full qualifications is appended as Exhibit "1."

4.      I have personal knowledge of the facts set forth in this Declaration, and if called upon to do so, I could and would competently testify to these facts, as to other matters I have knowledge based on information and belief.

5.      A true and correct copy of the Municipal Service Review ("MSR") report prepared by the Riverside LAFCO for the Debtor, for a hearing in September 2025, is attached as Exhibit "2." This document was not prepared by the Debtor, a copy is merely provided for reference purposes.

6.      A true and correct copy of the Debtor's response to the MSR, which is attached to a staff report dated October 1, 2025, is attached as Exhibit "3." I executed this response.

7.      Debtor owns and operates the Palo Verde Hospital ("Hospital"), an accredited Critical Access Hospital located at 250 N. 1st Street, Blythe, CA. Compared to other healthcare districts overseen by the Riverside LAFCO, which are the Desert Healthcare District and the San Gorgonio Memorial Healthcare District, the Debtor has a much smaller population that it serves.

8.      There are no other hospitals in the state within 100 miles of the Debtor's Hospital. The nearest hospital is across the border in Arizona, the La Paz Regional Hospital in Parker, Arizona.

9.      The Debtor has been in financial trouble for a number of years. But, over the past approximate five-year period, it has repeatedly received grants and more than $9 million in loans from the California Health Facilities Financing Authority ("CHFFA"), which is the Debtor's largest creditor claim. Debtor has no outstanding bond liabilities.

10.     In May 2025, the Debtor's local banking partner, Provident Bank, terminated its line of credit and setoff what it was owed from funds on deposit in the Debtor's bank account. Without a line of credit and with substantially less available cash, the Debtor relies on collecting its receivables in order to fund its ongoing operational expenses. After drastic scale backs to its services in the past fiscal year, the Debtor has reduced its monthly operational expenses to approximately $1 million, and only currently provides 24/7 emergency room services, and no inpatient or long-term care. The emergency room operations have a total of seven beds.

11.     Additionally, I am informed that the Hospital itself is not currently in compliance with seismic safety building standards for licensed acute-care hospitals under California law. The deadline for retrofitting the building has not yet passed. The structures comprising the hospital building will require significant capital improvements in order to meet seismic safety standards; however, due to the Debtor's dire financial condition, the exact cost of these improvements is not currently known and there is no expectation that the improvements could be made without outside assistance.

12.     Due to its liquidity crunch, the Debtor has not been able to pay all of its debts as they come due, and is reserving as much of its operating cash as possible in order to continue to fund payroll and essential goods and services to continue to provide emergency room care for its service area. Because the Debtor does not have a substantial cash reserve, if it paid all of its outstanding vendors and service debts, it is projected to immediately run out of operating cash.

13.     In order to preserve its current operations and maintain, to the greatest extent financially feasible, a sufficient standard of patient care, the board of directors for the Debtor authorized, in a majority vote, this Chapter 9 bankruptcy case to be filed. Three directors voted in favor of the filing, one voted against, and one abstained.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 2, 2025.

SANDRA J. ANAYA

# Declaration of D. Edward Hays

I, D. EDWARD HAYS, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am the lead bankruptcy attorney for the Palo Verde Healthcare District, the Debtor in this case ("Debtor" or "PVHD"). I am a founding partner of the law firm of Marshack Hays Wood LLP, a boutique bankruptcy firm in the Central District of California. Although our office is physically located in Irvine, California, we have an extensive bankruptcy practice covering Riverside County and San Bernardino County.

4.      I have personal knowledge of the facts set forth in this Declaration, and if called upon to do so, I could and would competently testify to these facts, as to other matters I have knowledge based on information and belief.

5.      Over the past few months, I have attended multiple public board meetings for the Palo Verde Healthcare District as the bankruptcy attorney for PVHD. On the evening of October 1, 2025, I attended the scheduled board meeting on that date and, after a period of public comment regarding the filing of the Chapter 9 bankruptcy, and in connection with my report to the board, I verbally informed all attendees (including members of the public) of the meeting that the Court had reserved a hearing for October 8, 2025, at 1:30 p.m. to hear this motion.

6.      A true and correct copy of the proposed notice of the bankruptcy case to be distributed by publication is attached as Exhibit "4." The form of the notice is similar to the form of notice which was approved in the Chapter 9 case of *In re Western Community Energy*, case no. 6:21-bk-12821-SY, by the Court's order entered on July 28, 2021, as Docket No. 125.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 2, 2025.

*/s/ D. Edward Hays*

_____
D. EDWARD HAYS

MOTION TO SET CASE STATUS CONFERENCE AND SET DEADLINE AND PROCEDURES RE: ELIGIBILITY

**EXHIBIT 1**

# Professional Resume

Sandra J. Anaya RN
250 N. First Street
Blythe, CA 92225

## Professional Summary

- Accomplished, outcome oriented, career ladder professional with progressive and successful experience in nursing management, hospital operations, and administrative leadership.
- In-depth knowledge of CMS, licensing, and accrediting agency standards [DNV, JC, and HFAP].
- Developed, implemented, and coordinated integrated quality, case management, and discharge planning systems since 1983.
- Dynamic educator. Proficient in course development and knowledge of teaching-learning principles for adult and geriatric patients.
- Assisted with the implementation of an integrated electronic health care record for a rural facility and clinic.
- Active involvement and oversight in the start-up of three acute care facilities from 1978 to 1997.
- Combined hospital licensure for two acute care facilities, 13 miles apart, meeting all licensing standards.
- Established hospital-based clinics and programs for bariatric surgery, wound management, perinatal outreach, rural health.  Opened a hospital-based sub-acute unit and home health agency.
- Implemented standards and achieved certification for Bariatric and Orthopedic Centers of Excellence.
- Implemented standards and coordinated activities and outcomes for HRSA-sponsored grants in disaster planning and a targeted diabetic prevention program for school-age children.
- Experienced in the development of a Community Benefit Plan and needs assessment for a not-for-profit facility.
- Provided nursing and management consultation for Paracelsus Healthcare Corporation 1984-1997. Worked with corporate personnel to achieve JC accreditation for several facilities.
- Independent management and nursing consultant since 1997.

## Credentials

- Current licensure as an RN in the State of California
- Certified Professional in Healthcare Quality [CPHQ]
- Healthcare Accreditation Certified Professional [HACP]
- Certified Legal Nurse Consultant [CLNC]
- Certification in Gerontology, Cal State University, Fullerton
- Lifetime Designated Ryan Teaching Credential for Adult Education; Instructor, Montebello Adult Education, 1976 to 1979
- Public Health Nurse [PHN] Certificate, Cal State University, Fullerton
- Certified Clinical Health Coach
- Certified TeamSTEPPS Master Trainer
- Approved BRN Provider since 1983

## Work History

**Chief Executive Officer**                                          2013 to present
Palo Verde Hospital, Blythe, California

**Director of Quality and Risk**                                     2012 to 2013
Pacific Health, Tustin, California

**VP Quality, Risk and Accreditation**                              2011 to 2012
Alta Corporation, Los Angeles, California

**Chief Operating Officer/Chief Nursing Officer**                   1997 to 2011
Tri-City Regional Medical Center, Hawaiian Gardens, California

**Chief Executive Officer [Two hospitals]**                         1992 to 1996
Los Angeles Community Hospital, Norwalk Community Hospital

**Chief Operating Officer/Chief Nursing Officer**                   1988 to 1992
Norwalk Community Hospital, Norwalk, California

**Director of Nursing**                                             1983 to 1988
Los Angeles Community Hospital, Los Angeles, California

**Assistant Director of Nursing/Medical Surgical Supervisor**
East Los Angeles Doctor's Hospital, Los Angeles, California         1978 to 1983

**Medical Surgical Supervisor**
Santa Marta Hospital                                                1976 to 1978

**Staff Nurse/Charge Nurse**
Greater El Monte Community Hospital, El Monte, California            1975 to 1976

## Education

Master of Science Degree in Healthcare Administration               1993
University of Verne, La Verne, California

Bachelor of Science Degree in Nursing                              1979
California State University, Fullerton, California

Lifetime Designated Ryan Adult Education Teaching Credential        1979
UCLA Extended Adult Education Teaching Program

Associate Arts Degree in Nursing                                    1975
East Los Angeles College, Monterey Park, California

Volunteer speaker for Alzheimer's Association, 1997 to 2010

**EXHIBIT 2**



RIVERSIDE LAFCO

# Municipal Service Review

# Palo Verde Healthcare District
## LAFCO 2025-06-4

## Public Hearing Report

## September 25, 2025

### (Released for Review September 3, 2025)

**This Public Hearing MSR Report is being circulated for consideration by the Riverside LAFCO Commission at the September 25, 2025 Commission meeting. Any agencies and members of the public wishing to provide comments on the Public Hearing MSR Report will be taken in writing prior to the meeting date or at the public hearing.**

**Written comments can be submitted by email at <u>info@lafco.org</u>, or mailed/delivered to the LAFCO office- 6216 Brockton Ave, Suite 111-B, Riverside, CA 92506.**

**Written comments received prior to September 16, 2025 will be included in the agenda package with the MSR. Written comments received after that date will be provided to the Commission at the Public Hearing.**

EXHIBIT 2, PAGE 14

## PREPARED FOR:

## RIVERSIDE LOCAL AGENCY FORMATION COMMMISSION

_____

**COMMISSIONERS**

Michael Vargas, Chair, City Member
Yxstian Gutierrez, Vice Chair, County Member
Agustin Arreola, Public Member
Stephen J. Corona, Special District Member
V. Manuel Perez, County Member
Steven Sanchez, City Member
Bruce Underwood, Special District Member

**ALTERNATE COMMISSIONERS**

Harvey Ryan, Special District Member
Jim Love, Public Member
Jose Medina, County Member
Linda Molina, City Member

**STAFF**

Gary Thompson, Executive Officer
Crystal Craig, Assistant Executive Officer
Melissa Cushman, Legal Counsel
Elizabeth Valdez, Commission Coordinator/Clerk
Michael Henderson, GIS Analyst
Rebecca Holtzclaw, Executive Assistant

**Prepared by:** Gary Thompson, Executive Officer

ii

# Table of Contents

## I. EXECUTIVE SUMMARY ............................................................................................1

PVHD MSR Goal............................................................................................1

Previous MSR for PVHD................................................................................2

Current Status of PVHD.................................................................................3

MSR Determinations, Available Options for PVHD and Potential Actions...........................................4

## II. INTRODUCTION ...............................................................................................9

Municipal Service Reviews............................................................................ 9

Disadvantaged Unincorporated Communities ............................................10

Riverside County Healthcare Districts...........................................................10

    Table II-1- PVHD Location & Authorized Services.......................................11

COVID-19 Pandemic ...................................................................................11

General Background Information on Rural Hospitals.....................................12

MSR Approach and Review Opportunities...................................................12

## III. PALO VERDE HEALTHCARE DISTRICT .......................................................13

Overview / Background ...............................................................................13

    Table III-1- Profile – Palo Verde Healthcare District....................................16

    Figure III-1- Boundary/SOI Map – Palo Verde Healthcare District...............17

Growth and Population Projections...............................................................18

Accountability and Governance....................................................................18

Services - Facilities- Infrastructure................................................................21

Financial Overview ......................................................................................23

    Table III-2- Financial Information...............................................................27

Disadvantaged Unincorporated Communities...............................................31

Status of Issues Identified in Most Recent MSR............................................31

Government Structure Alternatives ..............................................................31

Recommended Municipal Service Review Determinations .............................31

EXHIBIT 2, PAGE 16

**IV. OPTIONS & RECOMMENDATIONS**..................................................................35

    Options ............................................................................................................35

    Observations & Recommendations ...............................................................36

**ACRONYMS** .........................................................................................................38

EXHIBIT 2, PAGE 17

# I. EXECUTIVE SUMMARY

This Municipal Service Review (MSR) for the Palo Verde Healthcare District (PVHD) has been generated as directed by the Riverside Local Agency Formation Commission (LAFCO) at the June 26, 2025 Commission meeting as a result of the current dire financial situation at PVHD. This situation has forced suspension of many services on May 24, 2025, including surgical and in-patient admittance services, provided by the Palo Verde Hospital located in the City of Blythe. The Commission was specifically requested by the City of Blythe to conduct this MSR due to the significant impact the suspended services has had on the City of Blythe and surrounding communities population.

California state law establishes Local Agency Formation Commissions (LAFCOs) within each county for the purpose of establishing jurisdictional boundaries and spheres of influence (SOIs) for cities and special districts under their purview, and to authorize the provision of services within the approved service areas. Additionally, the purpose of an MSR is a periodic, or special circumstance comprehensive study of services provided by cities and special districts within a designated geographic area. The service review requirement is codified in the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (CKH), Government Code section 56000 et seq.

The MSR process does not require LAFCOs to initiate changes of organization based on service review findings. It only requires that LAFCOs make determinations regarding the provision of public services per Government Code section 56430. MSRs are not subject to the provisions of the California Environmental Quality Act (CEQA) pursuant to CEQA Guidelines section 15306.

CEQA Guidelines section 15306 consists of "basic data collection, research, experimental management, and resource evaluation activities which do not result in a serious or major disturbance to an environmental resource. These may be strictly for information gathering purposes, or as part of a study leading to an action which a public agency has not yet approved, adopted, or funded." **The ultimate outcome of conducting an MSR, however, may result in LAFCO making recommendations on a change of organization or reorganization.**

## PVHD MSR GOAL

***The overall goal to achieve with respect to PVHD and the Palo Verde Hospital is a fully restored and operational hospital with financial sustainability for the long-term.***

The ultimate goal of this MSR is to provide relevant information that provides options available, and potential actions that should be considered to resolve the financial and administrative issues that have been plaguing PVHD for several years resulting in the ultimate financial crisis, and bring the Palo Verde Hospital back to a fully operational facility for the long-term.

1

EXHIBIT 2, PAGE 18

Previous MSR for PVHD and Grand Jury Investigations

The last MSR for PVHD was performed in 2020, utilizing Fiscal Year 2017/2018 financial information. The Palo Verde Hospital was found to be operating as a fully functional hospital while looking to improve services, and looking for additional funding opportunities. The financial status of PVHD was positive having worked out of some prior financial struggles the previous few fiscal years. However the MSR notes that PVHD was concerned about the future financial health of the hospital due to evolving reimbursement structures of federal, state and private payers, in particular uncertainty in Medicare payments.

The PVHD MSR Determinations in the 2020 MSR for PVHD included references to the concerns of future financial viability, and although at the time, the financial condition of PVHD and services had improved, there remained a high risk for financial distress in the future. The determinations also noted that based on the hospital rating systems utilized at the time, the indicators for the hospital appeared to be marginally adequate. Additionally, PVHD was struggling with obtaining funding for required earthquake safety structural retrofits to the Palo Verde Hospital.

There have been several Grand Jury Investigations into the PVHD over the last 20 years. All have addressed issues related to administrative and financial situations. For the most part, PVHD has over the years addressed many of those issues, however, the financial viability of the Palo Verde Hospital has remained an ongoing problem.

The 2002/2003 Grand Jury noted issues at PVHD and the Palo Verde Hospital Association (PVHA) regarding operations and financial liabilities with several recommendations provided regarding interaction and legal and financial record keeping by the PVHD. The PVHD response concurred with the Grand Jury findings and recommendations and took steps to implement the recommendations.

The 2007/2008 Grand Jury noted significant issues related to services, Medi-Cal staffing, financial issues and fee structure problems, and Board administrative items. A significant recommendation was to terminate the contract with the hospital management firm retained to operate the hospital after a near bankruptcy in 2005. The PVHD response was generally negative toward the Grand Jury's report and efforts, disagreeing with most of the findings and recommendations. A few were acknowledged, however it was clear that the PVHD Board at that time was not receptive to anything the Grand Jury had to say. A lengthy rebuttal to the PVHD response was submitted by the medical staff of the hospital agreeing with virtually all of the Grand Jury findings and recommendations.

The 2017/2018 Grand Jury noted that Palo Verde Hospital has "historically experienced extreme staff shortages and lack of physician support…", and many operational problems servicing the Palo Verde Valley region. A key recommendation included reference to enlisting the Riverside University Health System (RUHS) to assist in improving services at the hospital and re-establishing its partnership with RUHS.

EXHIBIT 2, PAGE 19

The PVHD response to the Grand Jury articulated a detailed overview of the past several years of issues that compounded the struggles the PVHD had been facing, and noting measures they had been taking to improve services, achieving accreditation as a "Critical Care Hospital" through the federally recognized certification authority DNV, and providing justifications why certain service recommendations were unfeasible to implement at that hospital. The PVHD also noted the collaborative efforts ongoing with RUHS.

Current Status of PVHD

With the advent of the COVID-19 pandemic in 2020-2021 and the subsequent impacts on PVHD, the hospital reached a point where operations and services were in serious jeopardy. However for a period of time, the hospital was able to maintain services relying on COVID-19 federal reimbursement funds and grants under the Coronavirus, Aid, Relief, and Economic Security Act (CARES Act) and the Paycheck Protection Program. One significant affect of the COVID-19 pandemic on hospital revenue was the restrictions placed on elective surgeries in 2020, and also an estimated 30 percent average cost increase in supplies.

Beginning in 2023, however, the PVHD experienced significant financial distress and deficit budgets which has resulted in the current recent financial crisis resulting in suspension of various services at the Palo Verde Hospital in May of this year. It is apparent that COVID-19 related financial issues, along with what could be considered the classic "train wreck" of events beginning in 2023 through the present time created what could be considered, a "no win" situation for PVHD.

Several events occurred during this time frame all contributing to creation of the situation today. These included a reduction in Medicare rates, and the litigation costs associated with the lawsuit against the company Altera to recover massive lost patient health data as a result of software failures of their medical record system. This resulted in delays in ability to invoice and receive reimbursements from insurance and other sources, in particular, Medicare and Medi-Cal. Additionally, implementation of a new electronic record system and the cost of consultants to install the new system contributed to significant costs which were never anticipated. The turnover of four Chief Financial Officers during an 18-month period, a cyberattack on the financial system, and additional costs for a third-party billing service to assist in resolving the invoicing backlog all contributed to the financial deterioration.

The PVHD has implemented a 60-day Emergency Plan in an attempt to reduce the short-term impact of the deficit situation. However, PVHD staff has related that resumption of the suspended services may take time as the hospital needs to reach a consistent revenue stream to support those services without creating more deficit spending.

Recently it was announced by the local state senator for the Palo Verde and Blythe region that the state had assisted in funding for the hospital. However, according to PVHD management staff, the state did not provide any additional direct funding for the hospital to maintain operations. The state did defer payments of one outstanding bridge loan of

3

approximately $600,000 for three years, with a possible loan "forgiveness", and extended another bridge loan for $8.5 million whereby a portion of this loan may be "forgiven" each year. According to PVHD staff, these concessions, although helpful, do not resolve the current significant revenue and cash flow problem, even in the short-term.

Further, the PVHD has experienced a significant turnover in Chief Financial Officers (CFOs) in the last few years. The current CFO is the 4th CFO since 2023. This has contributed to issues with financial management and getting the bi-annual audits completed. Recently, the PVHD has retained a very good and dedicated CFO who is diligently working to financially right the ship, both short-term and long-term.

PVHD has initiated appropriate staff reductions and furloughs related to the suspension of services, cancellation and/or re-negotiation of various support services and products contracts due to the lesser need, and deferral of certain facility maintenance as part of the 60-Day Emergency Plan. PVHD management staff has indicated that no debt or accounts payable are currently in a default status. PVHD management staff has reported that all remaining hospital and PVHD staff are working diligently and very hard to as they say to "get the ship righted and back on track."

Riverside University Health System staff have taken an active role in assisting the population served with services, as well as conducting community meetings and have created three community groups working to address specific needs. They include the Workforce Group supporting workers impacted by the suspension of services, the Healthcare Workgroup to address needs the hospital clinic cannot provide, and the Supportive Services Group primarily coordinated by the County Department of Public Social Services for Medi-Cal and social services support to the community.

<u>MSR Determinations, Available Options for PVHD and Potential Actions</u>

Following lists the required MSR Determinations based on the review of all documentation provided and obtained through arduous research and interviews with appropriate personnel knowledgeable of the financial and administrative issues facing the PVHD at this time.

<u>*MSR Determinations*</u>

*1)    Growth and Population Projections*

- The PVHD currently serves an estimated population of approximately 18,000 over a geographical area of approximately 1,022 square miles. The District encompasses the City of Blythe, and the unincorporated communities of Mesa Verde, Ripley and Midland (currently an unpopulated ghost town).

- The general population is mainly low to middle income residents and a diversified ethnic mix, with the largest being Hispanic followed by Caucasian ethnicity.

4

EXHIBIT 2, PAGE 21

- PVHD's service area most likely has some potential for growth most notably within the City of Blythe, however, recent history from the California Department of Finance reflects population stagnation mostly and a recent significant decrease in the City of Blythe population over the last few years. Some of the population decline was the recent closure of the Chuckawalla State Prison.

- Although the PVHD does not retain any land use planning and entitlement authority as those functions are reserved the cities, and the county for unincorporated areas, the PVHD must anticipate and forecast future demands.

- Although the population of the City of Blythe has decreased fairly significantly recently, the PVHD must be prepared to anticipate that hospital services will see increased demands proportionate with any future population growth that may occur.

## 2) *Location and Characteristics of Disadvantaged Unincorporated Communities Within or Contiguous to the District's SOI.*

- There are nine disadvantaged unincorporated communities (DUCs) associated to the City of Blythe and/or within the PVHD boundaries.

## 3) *Present and Planned Capacity of Public Facilities and Adequacy of Public Services, Including Infrastructure Needs and Deficiencies Related to Disadvantaged Unincorporated Communities*

- The PVHD and the Palo Verde Hospital do not maintain the financial capacity for long-term provision of all services the hospital normally provides at this time.

- The PVHD is not meeting the level of service delivery the community not only desires, but is highly necessary for public health issues of a critical and non-critical nature.

- The hospital facility is in need of significant renovations for meeting current state earthquake standards.

- There are no additional deficiencies related to the nine DUCs identified within the PVHD SOI other than that already identified.

## 4) *Financial Ability of the District to Provide Services*

- Overall, the financial position of the PVHD is clearly considered very unstable at this time, with significant cash flow issues due to lack of ongoing revenues resulting in major service reductions and resultant expenditure reductions for staffing and other support services.

- The PVHD is in serious financial distress and does not have the financial ability to provide the full services of the Palo Verde Hospital.

- Available cash assets are nearly depleted as PVHD works to cut costs as quickly as possible to support cash flow requirements.

5

- Surgical services and in-patient services have been suspended forcing patients to travel approximately 100 miles to the closet California hospitals.

- The PVHD Board of Directors has implemented a 60-Day Emergency Plan to address some of the short-term financial issues.

- **The immediate need is a significant cash infusion to the PVHD to sustain the short term**, and eventually, a stable long term revenue stream sufficient to support a fully operational and staffed hospital as is needed in the Blythe and Palo Verde region.

- The state did not provide any additional direct funding for the hospital to maintain operations. The state did extend the Non-Designated Public Hospital Bridge Loan Program debt for $8.5 million for PVHD whereby a portion of this loan may be "forgiven" each year. The state also deferred payments of one other outstanding state bridge loan of approximately $600,000 for three years, with possible loan forgiveness. According to PVHD staff, these concessions, although helpful, do not resolve the current significant revenue and cash flow problem, even in the short-term.

- The PVHD is not in default on any debt obligations at this time.

- The PVHD normally conducts an independent audit bi-annually, however, PVHD staff notes that as a result of the recent financial crisis and the heavy turnover of CFOs in the last 18 months, the FYE June 30, 2023 and 2024 audits just recently got underway and are not yet available. The most recent previous audit for FYE June 30, 2021 and 2022 do reflect an "unmodified" opinion.

## 5)    Status of, Opportunities for Shared Facilities

- There is no foreseeable opportunity for shared facilities as the hospital is unique to the type of services provided, and no other facility is within any reasonable distance to provide the services.

- Options are available for other governance or operational opportunities for the hospital.

## 6)    Accountability for Community Service Needs, Including Governmental Structure, and Operational Efficiencies.

- The PVHD is governed by a five-member Board of Directors elected at large to four-year staggered terms by the registered voters within the PVHD boundaries.

- Hospital staffing is normally approximately 120-125 personnel, however during the suspension, layoffs and furloughs have resulted in a significant staffing reduction.

- The Palo Verde Hospital website acts as the PVHD website and provides various types of information related to hospital services and activities, and for PVHD Board and administrative activities.

- The website lacks transparency from the aspect of searching for agendas, meeting minutes and financial information as the link to the page for such is at the very bottom of the home page where most residents would not notice. That link should be much more visible on the website.

- There is no direct email contact information listed for Board members, nor the PVHD CEO on the website. Phone and email contact information for most staff is provided however very difficult to find.

- Meeting agendas with staff reports are posted on the website, however, no meeting minutes have been posted since March of 2025 as the Board of Directors has been unable to approve the minutes from the last several Board meetings.

- Only the FY 2021 & 2022 bi-annual audit is provided on the website, and financial information is mostly limited to monthly reports. The current PVHD draft budget for FY 2025/26 is listed on the website.

- Several alternative government structure options should be considered if the current PVHD management structure and the Board of Directors cannot correct the long-term structural issues of maintain a fully operational hospital.

**7)    Any Other Matter Related to Effective or Efficient Service Delivery, as Required by Commission Policy.**

- The Commission has concerns regarding the overall financial and management status of the PVHD, and particularly the Palo Verde Hospital.

- The Commission has requested an assessment of the PVHD's ability to return the hospital to full operational status long-term, and other options available for governance and operation of the hospital if necessary.

The following are several Options available for the PVHD and other governmental agencies to consider in order to reach the ultimate desired goal of a fully operational hospital with long term sustainability. Section IV further on at the conclusion of this MSR report provides a more comprehensive discussion of these available Options, and Recommendations available to the PVHD for potentially resolving the short-term and long-term financial situation, and to return the Palo Verde Hospital to a fully functional facility.

_Available Options/Potential Actions_

1) PVHD continue with implementing the Board of Directors adopted recovery plan.
2) Obtain state or county funding to restore solvency, restore all suspended services, and clear all outstanding debt.
3) Obtain commercial funding to restore solvency, restore all suspended services, and clear all outstanding debt.
4) Lease the hospital to a public hospital agency or private hospital system.

EXHIBIT 2, PAGE 24

5) Form a Joint Powers Authority with the PVHD, the City of Blythe and the County of Riverside.
6) The City of Blythe or the County of Riverside assume ownership and operation of the hospital & dissolve the PVHD.
7) Consolidate PVHD with Desert Healthcare District & dissolve the PVHD.
8) Sell the Hospital to a private provider & dissolve the PVHD.
9) File for Chapter 9 Bankruptcy proceedings.

EXHIBIT 2, PAGE 25

## II.  INTRODUCTION

Beginning in 2001, LAFCOs in each county in California were required to review and, as necessary, update the SOI of each city and special district. SOIs are boundaries, determined by LAFCOs, which define the logical, ultimate service area for cities and special districts. No SOI can be updated, however, unless LAFCOs first conduct an MSR.

Historically, MSRs and SOI updates have been sporadic at best and not performed as intended by the statutes. Although LAFCO completed an initial round of MSR/SOI updates after the initial requirements were implemented, updates have occurred somewhat sporadically since, with some agencies not having had an MSR or SOI update in 15 years or more. As part of the Five-Year Strategic Plan adopted in January of 2020, a schedule was developed to bring these agencies current with respect to the statutes governing these reviews. The new Five-Year Strategic Plan adopted in June of 2024 continues with the schedule of the five-year MSR/SOI review and update process. The MSR process for the three Riverside County Healthcare Districts is scheduled to begin later this fiscal year, however, the PVHD MSR has been accelerated due to the current financial and services issues being experienced.

Municipal Service Reviews

CKH requires LAFCOs to review and update SOIs not less than every five years and to conduct MSRs before updating SOIs. The service reviews provide LAFCOs with a tool to study existing and future public service conditions comprehensively and to evaluate organizational options for accommodating growth, preventing urban sprawl, and ensuring that critical services are provided efficiently. Additionally, MSRs may be conducted when special circumstances arise that warrants an immediate MSR such as the current status of the PVHD located in the City of Blythe.

Government Code section 56430 requires as a mandatory component of an MSR, a written statement of determinations with respect to each of the following topics:

1. Growth and population projections for the affected area.
2. The location and characteristics of any disadvantaged unincorporated communities within or contiguous to the sphere of influence.
3. Present and planned capacity of public facilities, adequacy of public services, and infrastructure needs or deficiencies including needs or deficiencies related to sewers, municipal and industrial water, and structural fire protection in any disadvantaged unincorporated communities within or contiguous to the sphere of influence.
4. Financial ability of agencies to provide services.
5. Status of, and opportunities for, shared facilities.
6. Accountability for community service needs, including governmental structure and operational efficiencies.
7. Any other matter related to effective or efficient service delivery, as required by commission policy.

9

Disadvantaged Unincorporated Communities

On October 7, 2011, Governor Jerry Brown signed SB 244, which made two principal changes to CKH.  SB 244 requires LAFCOs to: (1) deny any application to annex to a city territory that is contiguous to a disadvantaged unincorporated community (DUC) unless a second application is submitted to annex the disadvantaged community as well; and (2) evaluate disadvantaged unincorporated communities in an MSR upon the next update of an SOI after June 30, 2012.  The intent of the statute is to encourage investment in DUCs that often lack basic infrastructure by mandating cities to include them in land use planning, and LAFCOs when considering annexation proposals.  SB 244 defines a DUC as any area with 12 or more registered voters, or as determined by commission policy, and where the median household income is less than 80 percent of the statewide annual median household income.

Although DUCs are applicable primarily to cities, it is important to consider them with respect to services provided by special districts, in particular those special districts that provide water, wastewater and fire protection services. However, districts providing other services, such as services provided by PVHD into a DUC warrant being identified and reviewed.

Riverside County Healthcare Districts

A special district is a separate local government that delivers a limited number of public services to a geographically limited area. Special districts have four distinguishing characteristics.  They are a form of government, have governing boards, provide services and facilities, and have defined boundaries. Healthcare Special Districts generally provide several types of medical and related services, including owning and/or operating hospitals, medical clinics, outpatient facilities, emergency services, and other related services that are authorized under federal regulations and the state Health & Safety Code section 32000-32492. Services specifically authorized to be provided are generally identified at the formation of the Healthcare District and as authorized under the statute.

There are three independent Healthcare Districts within Riverside County:

1) Palo Verde Healthcare District which covers a vast segment of the eastern part of the County including the City of Blythe and the unincorporated communities of Mesa Verde, Ripley and Midland.

2) Desert Healthcare District which covers the entire Coachella Valley, including the Cities of Coachella, Indio, La Quinta, Rancho Mirage, Palm Springs, Palm Desert, Cathedral City, Indian Wells and Desert Hot Springs, and the unincorporated communities of Mecca, Bermuda Dunes, Oasis, North Shore and Vista Santa Rosa.

3) San Gorgonio Memorial Healthcare District which generally covers the Cities of Banning, Calimesa and Beaumont, and the unincorporated community of Cherry Valley.

EXHIBIT 2, PAGE 27

As this MSR is focused solely on the PVHD, only MSR determinations for the PVHD are provided in this report. Options/Recommendations are discussed in detail in Section 4 of this MSR.

An outline of the PVHD,s service area and authorized services are listed in **Table II-1** below. Detailed discussion of the PVHD operations, services and financial status are included in Section 4.

**Table II-1- PVHD Location & Authorized Services**

| LOCATION | AUTHORIZED SERVICES |
|---|---|
| City of Blythe and North to the San Bernardino County Line, South to the Imperial County Line, East to the Arizona Border and West to the State Prison, including the unincorporated communities of Mesa Verde, Ripley and Midland | Full range of hospital services, including Medi-Cal and surgery services, radiology and laboratory services, ambulance services, clinical and outpatient services. PVHD owns and operates one 51 bed hospital in the City of Blythe |

COVID-19 Pandemic

During the two-year period of 2020-2021 of the COVID-19 virus pandemic, the virus had exponentially spread throughout the world and the United States, resulting in the infection of large segments of populations in all states, including California. Additionally, the death rate from the virus was significantly greater than previous COVID type viruses with no immediate treatment remedies nor vaccines available.

The state implemented several measures to attempt to control the spread of the virus including a statewide stay-at-home order, alternating shutdowns and partial re-openings of many parts of the economy. The impact on the economy, in particular small businesses and employment, was massively significant. As a result, with the economic downturn, local governments began seeing significant decreases in various revenues and in many cases, service impacts. In the case of the Healthcare Districts in Riverside County, the epidemic did result in significant increases in workload due to the high infection rate associated with the disease requiring significant hospital services.

Although federal stimulus funding was provided to local governments to assist in offsetting some revenue losses, special districts were not included in most of the initial funding that was authorized in 2021 for recovery purposes. Therefore Healthcare Districts did not receive any of that funding. However, as services provided by Healthcare Districts are largely funded by insurance payments, Medicare and Medicaid payments, and service charges to customers/clients, Healthcare Districts in general became economically strained due to the tremendous amount of additional resources required to be utilized for treatment during the pandemic, with follow-on reimbursements lacking enough timeliness to maintain financial stability throughout the pandemic.

EXHIBIT 2, PAGE 28

_General Background Information on Rural Hospitals_

The PVHD has noted in the District's recently revised Strategic Narrative and Goals the following information relevant to rural hospitals in general:

_"Over the past decade, the threat of hospital closures in small, remote communities has increased. Hospitals are closed entirely, with some only providing access to outpatient services, including clinics. Complex and diverse causes have led to these closures, including increasing regulations under the Affordable Care Act. Other factors include shrinking populations, uninsured patients, outdated facilities, and the inability to transition into new care delivery models, frequently due to a lack of financial and human resources. The U.S. Department of Agriculture estimates 46.1 million Americans live in rural areas, representing 14% of U.S. residents. Of 1,825 rural hospitals in the United States, these facilities may be classified as critical access, county hospitals, district hospitals or for-profit hospitals."_

MSR Approach and Review Opportunities

A collaborative approach has been used throughout the preparation of this MSR report. Initially, an introductory questionnaire was distributed to PVHD on July 1, 2025 advising of the upcoming MSR process and requesting specific information related to general administrative and operational functions, services provided, financial information including recent budgets and audits, and specific information regarding the recent financial struggles which has resulted in significant suspension of key hospital services and real time fiscal insolvency. All information readily available in historical files or on the PVHD website was reviewed for applicability to the MSR update technical analysis and report. Follow up on the responses to the questionnaire and website information were performed when necessary. Additionally, staff conducted data collection discussions with City of Blythe elected and staff personnel, the Riverside County 4th District Supervisor and staff, the Riverside University Health System Executive Director, PVHD's Chief Executive Officer and Chief Financial Officer, and the Chief Executive Officer of the Desert Healthcare District.

Once the PVHD information in hand was considered sufficient to develop the MSR report, an Administrative Draft Report was generated and then sent to the PVHD management staff for review and comments. All comments received were considered and incorporated where appropriate. The Public Hearing Report was then completed and released to the public on September 3, 2025, and noting written comments were being accepted. Additional comments will be taken during the public hearing and addressed as necessary. Upon final action by the Commission for the MSR determinations and recommendations, a Final Report incorporating any revisions and/or direction provided by the Commission will be completed and published.

EXHIBIT 2, PAGE 29

## III.  PALO VERDE HEALTHCARE DISTRICT

This Section provides a comprehensive review of the current status of the PVHD as follows:

- A brief background/history of the agency
- A general profile of agency services, infrastructure, and financial information
- A boundary map with a sphere of influence boundary overlay
- A detailed discussion of agency operations and finances
- Recommended MSR Determinations

Section IV further on is a list and discussion of Options and Recommendations available to the PVHD for potentially resolving the short-term and long-term financial situation and to return the Palo Verde Hospital to a fully functional facility.

<u>OVERVIEW / BACKGROUND</u>

The PVHD was officially formed in 1948 as a special district in accordance with the State of California Health & Safety Code, and currently operates under Health & Safety Code section 32000 et seq. The District encompasses approximately 1,022 sq. mi. including the City of Blythe, and the unincorporated communities of Mesa Verde, Ripley and Midland. Population served within the District is estimated at approximately 18,000.

PVHD's SOI is primarily coterminous with its current service boundary, with the exception of an extension to the west to the Desert Healthcare District boundary as the PVHD is the most logical service provider for the unincorporated communities of Desert Center, Eagle Mountain, and Lake Tamarisk.

*Historical Information (PVHD Website and Riverside LAFCO Documents)*

*In 1925, the American Legion turned over its clubhouse to be used as a hospital named Palo Verde Health Center. In 1937, the facility now called Palo Verde Hospital opened its doors as an official unit of the County Medi-Cal Administration as the Blythe Branch of Riverside County Hospital. Over the years, the hospital has changed hands and on more than one occasion was temporarily closed – especially during the hot summer months. In 1948, a non-profit corporation was formed to create what is now known as the Palo Verde Healthcare District.*

*The Palo Verde Healthcare District was created for the purpose of purchasing and reopening and operating the Palo Verde Hospital, owned at the time by the Palo Verde Healthcare Association. In the 1990s, the hospital encountered financial difficulties, and because of which, PVHD leased it to Brim Healthcare, Inc. for management and operation.  In 2002, the newly elected PVHD Board of Directors challenged the lease and made the decision to terminate the lease agreement. Lifepoint Hospital Inc. took over the operations of the hospital under the new lease agreement. However, in 2005, Lifepoint*

EXHIBIT 2, PAGE 30

*Hospital, Inc. terminated the lease, and PVHD took back control of the hospital operations. PVHD continues to be responsible for operating the Palo Verde Hospital.*

*Mission Statement:*

*"To deliver and strengthen the provision of safe, effective, and quality healthcare services, for our patients and a diverse community, through integrated partnerships that advance care coordination, wellness, and prevention."*

*Vision Statement*

*"We want to be recognized as a preferred provider of healthcare services, achieved through continual implementation of our core values."*

*Core Values*

*"Our mission and vision are guided by our core values and principles:"*

*Purpose*
*Respect*
*Integrity*
*Dedication*
*Engagement*

The Palo Verde Hospital is designed and originally staffed as a fully functioning hospital providing all outpatient, emergency and surgical services and support activities. The hospital is also accredited as a Critical Access Hospital, a key element of receiving higher reimbursement rates for some inpatient and outpatient services and allows for the hospital to operate with "swing beds." Additionally, the hospital operates the Palo Verde Hospital Community Clinic, a clinic licensed as a Rual Health Clinic.

Over the last 20 years, the PVHD has experienced periods of financial stress and several Riverside Grand Jury reviews which resulted in improvements made over the years in services and financial resiliency. However, with the advent of the COVID-19 pandemic in 2020-2021 and the subsequent impacts on PVHD, the hospital reached a point where operations and services were in serious jeopardy.

It is apparent that COVID-19 related financial issues, along with what could be considered the classic "train wreck" of events beginning in 2023 through the present time created what could be considered, a "no win" situation for PVHD. Several events occurred during this time frame all contributing to creation of the situation today. These included a reduction in Medicare rates, and the litigation costs associated with the lawsuit against Altera to recover the massive lost patient health data as a result of software failures of their medical record system resulting in delays in ability to invoice and receive reimbursements from insurance and other sources, in particular, Medicare and Medi-Cal. Additionally, the turnover of four Chief Financial Officers during an 18-month period, a

cyberattack on the financial system, and additional costs for a third-party billing service to assist in resolving the invoicing backlog all contributed to the deterioration.

The result of these issues occurring essentially at the same time has forced the PVHD to suspend surgical and admittance/inpatient services, significantly reduce staff, and issue a Board of Directors resolution to declare a Fiscal Emergency to allow for authorization for filing of a Chapter 9 Bankruptcy Petition if it is inevitable to be necessary.

In an attempt to recover, the PVHD has adopted a 60-day Emergency Plan to take certain measures to stabilize the budgetary and cash flow issues and implementing the suspension of the surgical and admittance services. The Emergency Department, Radiology & Laboratory Departments, the Clinic and support functions for these departments remain available.

Further discussion on the financial status of PVHD and the PVHD efforts planned for obtaining solvency are discussed in the FINANCIAL OVERVIEW section following further in this report.

On the following pages, **Table III-1** provides a snapshot profile of the PVHD, and **Figure III-1** provides a map of the PVHD current boundary and SOI.

Table III-1 reflects information for the most recent audit for Fiscal Year Ending June 30, 2022. However, due to the lack of audited information for FYE 2023/2024, unaudited end of year actual and/or projected financial information is provided in **Table III-2** under Financial Overview with a full discussion.

EXHIBIT 2, PAGE 32

**Table III-1- Profile- Palo Verde Healthcare District**

| General Information | |
|---|---|
| Agency Type | Municipal – Local Healthcare District |
| Principal Act | California Health & Safety Code section 32000-32492 |
| Date Formed | 1948 |
| Services Provided | Hospital services- surgical, emergency, radiology, laboratory, support functions |
| Location | PVHD Office & Hospital- 250 N. First Street, Blythe, CA 92225 (760) 922-4115 |
| Sq. Miles/Acres | Approximately 1,022 sq. miles within the PVHD boundaries. |
| Contact | Sandra J. Anaya, Chief Executive Officer: Sj.anaya@paloverdehospital.org |
| Website | www.paloverdehospital.org |
| Population Served | Estimated 18.000 (City of Blythe and communities of Mesa Verde & Ripley) |
| Last SOI Update | 2021 |

| Governance/Staffing | |
|---|---|
| Governing Body | 5-member Board of Directors, elected at large |
| Terms | 4-year staggered terms |
| Meeting Information | Recently- Last Wednesday of the month at 6:00pm at the Blythe City Hall City Council Chambers, 235 N. Broadway, Blythe, CA 92225. |
| Total Staff | Approximately 120-125 employees (when fully staffed) |
| Staff Categories | Chief Executive Officer, Administrative Staff, Hospital Staffing including physicians, nursing, laboratory, clerical and patient support staff. |

| Facilities/Other Infrastructure | |
|---|---|
| Facilities | Hospital Facility- Palo Verde Hospital |
| Other Infrastructure | None |

| Financial Information- FY 21/22 Actuals (Audited Financial Statements) Latest Available | | | |
|---|---|---|---|
| | Revenues | Expenditures | Net Surplus/(Deficit) |
| Proprietary Fund | $23,404,709 | $21,203,727 | $2,200,982 |
| | FY 21/22 | Long-term Planned Expenditures | |
| Capital Expenditures | None | Hospital Building retrofits for Earthquake Safety standards pending funding | |
| | | | |
| Unrestricted Net Position (Fund Balance) | $13,678,899 | June 30, 2022 Financial Statement | |
| Capital Assets (Net) | $3,416,650 | June 30, 2022 Financial Statement | |
| Net Position | $16,713,366 | June 30, 2022 Financial Statement | |

| Debt & Unfunded Pension/OPEB Liabilities- Year Ending June 30, 2022 | |
|---|---|
| Long-term Liabilities | $2,474,322- loans with the California Health Facilities Financing Authority |
| Unfunded Pension Liability | None |
| Unfunded Other Post-Employment Benefits (OPEB) Liability | None |

**Note:** The Palo Verde Healthcare District has not had an Audit since FY 21/22, however PVHD staff indicates audits for FY 22/23 and 23/24 are in progress.
**Note:** The loans carried as long term liabilities are reported as subject to eventual forgiveness.

16

**Figure III-1- Boundary/SOI Map – Palo Verde Healthcare District**



17

EXHIBIT 2, PAGE 34

GROWTH AND POPULATION PROJECTIONS

The PVHD currently serves an estimated population of approximately 18,000 over a geographical area of approximately 1,022 square miles. The PVHD encompasses the City of Blythe, and the unincorporated communities of Mesa Verde, Ripley and Midland (currently an unpopulated ghost town).

The general population is mainly low to middle income residents and a diversified ethnic mix, with the largest being Hispanic followed by Caucasian ethnicity. It is noted that there are nine (9) disadvantaged unincorporated communities within the PVHD boundaries. The service area most likely has some potential for growth most notably within the City of Blythe, however, recent history from the California Department of Finance reflects population stagnation mostly and a recent significant decrease in the City of Blythe population over the last few years.

| Blythe | 4/1/20 | 1/1/21 | 1/1/22 | 1/1/23 | 1/1/24 | 1/1/25 |
|--------|--------|--------|--------|--------|--------|--------|
|        | 18,778 | 17,403 | 17,285 | 17,250 | 17,447 | 15,400 |

The data over the last 6 years represents an overall population decrease of approximately 18 percent. Additionally, the populations of the unincorporated communities of Mesa Verde and Ripley combine at approximately 1,625. The PVHD also services Ironwood State Prison housing approximately 3,280 inmates, and was servicing the Chuckawalla State Prison until its closure in 2024 contributing to the loss of population services for the hospital.

Although the PVHD does not retain any land use planning and entitlement authority as those functions are reserved for the cities, and the county for unincorporated areas, the PVHD must anticipate and forecast future demands. Although the population of the City of Blythe has decreased fairly significantly recently, the PVHD must be prepared to anticipate that hospital services will see increased demands proportionate with any future population growth that may occur.

ACCOUNTABILITY AND GOVERNANCE

*Governance*

PVHD is governed by a five-member Board of Directors (Board), elected at large to four-year staggered terms. The selection of Board members is through an election within the PVHD and is consolidated with other statewide elections. The candidates receiving the highest number of votes for the positions to be filled are elected. Board members each serve for a period of four years. It should be noted that due to insufficient candidates submitting for election to the Board in 2022 and 2024, the current Board members were automatically appointed to the Board with the current term expiration dates.

The PVHD Board has reported that it meets every 4th Wednesday of the month at 6:00pm at the City of Blythe City Hall, City Council Chambers located at 235 N. Broadway, Blythe,

CA 92225. However, past meetings have taken place at the Palo Verde Hospital-Conference Room at 5:00pm every 4th Wednesday of the month.

The PVHD's Board consists of a President/Treasurer, Vice President, Secretary/Director, and two (2) Directors. There are no current vacancies on the Board. All ethics trainings are current for four Board members, recently completed in 2025, with one Board member current until August of 2025. Form 700 filings are current for all but one Board member. Additionally, a Parliamentary training for the Board was held on February 21, 2025, and was open to the public All but one Board member attended this training.

| PVHD Board of Directors | Term Expires |
|---|---|
| Sandra Hudson | 2028 |
| Trina Sartin | 2028 |
| David Brooks | 2026 |
| Carmela Garnica | 2026 |
| Rosalie Rowell | 2026 |

The PVHD maintains four committees considered standing committees- Finance/Audit, Legal, Personnel and Facilities. Each committee contains two Board members. These committees only meet when necessary, however the PVHD notes that the Finance Committee does generally meet as frequently as necessary and preferably on the 2nd Wednesday of the month at 5:00pm.

Additionally, On May 30, 2025, the City of Blythe established a Palo Verde Hospital Ad Hoc Committee to work with the PVHD as they work to resolve the situation with the hospital suspension of services. The City Council appointed Vice Mayor Joey Rodriguez and Councilman Sam Burton to the Committee, with Mayor Joey DeConinck as an alternate. The PVHD Board appointed three representatives to serve on the Committee: President Carmela Garnica, Vice President Rosie Rowell, and Interim Chief Financial Officer Michael Rose. This Committee has met several times since establishment and is working together toward the mutual goal of a fully functional hospital.

### *Website Transparency*

The PVHD (Palo Verde Hospital) website is the primary vehicle for disseminating information to the PVHD constituency. As the PVHD solely provides hospital services, the website is primarily focused and sufficiently organized to provide relevant information related to those operations.

Access to information relevant to PVHD administrative operations and information is listed under the link titled "Board Agendas & Minutes" which is located at the very bottom of the Home Page under a Quick Links heading. It should be noted that the manner in which this link is set up and is not a direct access link to the most current Board agenda, appears to be inconsistent with Government Code section 54954.2, and should be resolved by including a direct link to the most current Board agenda in a prominent place on the website Home Page.

19

Meeting agendas and written staff reports are posted on the website, however, Board minutes have not been posted since March as the Board continues to postpone adopting the minutes for several Board meetings. The website does not contain direct email addresses to contact Board members nor for the PVHD & Hospital CEO for direct access. There is direct email access for PVHD administrative staff and some for certain hospital personnel. The website does maintain a Contact link in two places for accessing phone numbers and hospital departments.

Pertinent financial information for the PVHD including budgets, budget update information and the last audit for Fiscal Years ending June 30, 2021 and 2022 are included on the website under the Board Agendas link and sub-links. The Board Agendas link and sub-links also include agendas for the Finance Committee meetings, and links to other informative documents. There is no PVHD staff compensation information available on the website.

### *Customer/Constituency Communication*

The PVHD reports that "the Palo Verde Hospital website is regularly updated with the latest information, offering the community a reliable and accessible source for updates. The PVHD also distributes public notices to the local radio station, KJMB-FM, to further broaden outreach. Community members are encouraged to reach out with any questions, comments, or concerns. Inquiries can be directed to the Clerk of the Board."

### *Customer/Constituency Accountability*

The PVHD notes: *"The Palo Verde Healthcare District remains committed to transparency and keeping its constituents and the broader community informed about the District's activities, including the current financial situation and its impact on services, employees, and the community as a whole."*

The PVHD further notes: *"to ensure ongoing communication, the District posts agendas for regular meetings 72 hours before the meeting and for special meetings at least 24 hours before the meeting."* Since the PVHD has been experiencing a fiscal crisis, there has been a standing agenda item to provide updates on such things as operations and financial matters.

PVHD also notes: *"Since November 2025 (2024), all budget discussion of the Board are conducted in open session, also since that time there has been staff reports for every agenda item in an effort to keep both the Board and the public fully appraise of the items under consideration. Also, since that time the PVHD reports that closed session is limited only to those items that are properly discussed in closed session pursuant to the Brown Act, the Healthcare District Law, and other applicable laws. These meetings are open to the public and serve as a key platform for sharing important developments."*

With respect to financial transparency, refer to the discussion in the FINANCIAL OVERVIEW section which follows further in this report.

<u>SERVICES – FACILITIES- INFRASTRUCTURE</u>

*Service Overview*

Significant planning documents for many healthcare districts are the Community Healthcare Needs Assessment (CHNA) and Community Healthcare Implementation Plan (CHIP) that are required as part of the Affordable Care Act. As an alternative to these planning documents, PVHD maintains a strategic plan developed in 2014 and recently updated, and annual strategic goals to guide future program and service efforts. The Strategic Plan notes:

*"The hospital is licensed for 51 acute care beds and is designated as a sole community government hospital offering a continuum of Medi-Cal, surgical, and obstetrical services. The hospital also provides basic emergency services with a physician on duty at all times. Patients of all ages are evaluated and treated in the ED. Major trauma patients are not routed to the facility by EMS providers. The hospital operates twenty-four hours a day, seven days a week for bedded services, and employs or contracts with approximately 150 full time equivalents."*

*"General acute medical, surgical, and obstetrical services are offered on an inpatient or outpatient basis. The hospital does not perform invasive, interventional cardiac or surgical procedures. Pediatric patients with non life threatening conditions are admitted to the facility on an infrequent basis. Pediatric patients or newborns needing Intensive Care Services are transferred from the ED to facilities providing those services…"*

As noted, the Strategic Plan outlines the overall menu of services that a rural hospital generally provides and is not considered a "trauma facility." Additionally, the PVHD has recently implemented a policy document "Scope of Services/Plan for Provision of Care and Service." This new policy identifies in great detail leadership and patient services responsibilities for a variety of administrative functions and patient services.

General hospital services provided prior to the suspension included Medical-Surgical, Radiology, Emergency Department, Cardiopulmonary, ICU/Critical Care, Surgical Recovery Room, Laboratory, and Pharmaceutical services.

Services suspended as noted by the hospital include Medical-Surgical Services and Surgical Recovery Room services. Additionally, the Strategic Plan does note that the ICU/Critical Care services have not been provided in the past. These suspended services represent the most important aspect of service delivery impact as the closet other hospitals that provide these services are a significant distance away.

The PVHD currently holds an Accreditation as a "Critical Care Hospital" through DNV, the federally designated certification authority for this level of accreditation. This allows for utilization of "swing beds" in a total of 25 beds in the hospital.

Although the PVHD has budgeted for the current fiscal year 2025/26, necessary

resources to provide all services not under the suspension, the PVHD notes that restoration of those suspended services will be a long-term process until an adequate cash flow to support elimination of deficit spending is achieved.

The PVHD currently contracts security, anesthesia, laboratory, radiology reporting, and as needed legal support and audit services. Additionally, the PVHD does maintain individual service contracts with various medical/surgical professionals. The PVHD notes that the currently suspended services also impact the contracts for these medical/surgical providers and the security and anesthesia contracts. The PVHD does not provide contract services to other agencies.

### Facilities/Infrastructure & Required & Planned Improvements

PVHD operates one 51 bed hospital (Palo Verde Hospital) and clinic consisting of five (5) separate structures located at 250 N. First Street, Blythe, CA 92225. The PVHD administrative activities are consolidated at the hospital. The PVHD does not possess any other facilities or infrastructure.

The five-building complex is inherently old and requires ongoing maintenance, Buildings A, D and E were constructed in 1937. Buildings B and C were constructed in 1961 and 1978 respectively. The primary need for the hospital buildings are earthquake safety renovations to bring the hospital buildings up to current state earthquake standards. However, as sufficient funds to perform these renovations is not available, the hospital will remain in the current state.

The PVHD reports that it has been actively engaged in obtaining funding for the necessary renovations, however, has not been successful in obtaining sufficient funds for the needed improvements.

The PVHD also notes that due to the current financial situation, routine maintenance to the hospital building such as stucco work and painting and updating the employee entrance have been placed on hold, Additionally the Building D roof project has been placed on hold.

### Service Adequacy

As noted above, with the current suspension of surgical and admittance/inpatient services, the hospital is no longer providing these services that they were providing, and should be providing given this is the only hospital within 100 miles of another hospital in the state. The closet hospitals that provide the suspended services are more than an hour drive, although there is a closer hospital across the Arizona border in Quartzsite, AZ.

Prior to the onset of the current financial crisis, the hospital was providing the services it has intended to provide, although has been challenged with financial issues for a number of years. Several hospital services continue to be provided- Radiology, Emergency

EXHIBIT 2, PAGE 39

Services, Laboratory, and Pharmaceutical and support function for these services, and the Community Clinic services.

### *Cooperative Programs*

The PVHD reports that there are no specific cooperative type programs that the District/Hospital is affiliated, however the District/Hospital does work with the Palo Verde Hospital Foundation, a 501c(3) non-profit organization formed in 2006 with the purpose of fundraising and creating a donor base to support hospital operations.

FINANCIAL OVERVIEW

PVHD carries all operational budgeting and accounting consolidated in one enterprise "Proprietary" Fund, and includes all assets and liabilities of the PVHD in accordance with Governmental Accounting Standards Board (GASB) pronouncements, all Financial Accounting Standards Board (FASB) Statements and Interpretations, all Accounting Principles Board (APB) Opinions, and Accounting Research Bulletins (ARBs), no matter when issued, except those that conflict with a GASB Pronouncement, as noted in the Fiscal Year Ending June 30, 2021 & 2022                    (FYE 2021/2022) audit documents.

The PVHD normally conducts an independent audit bi-annually, however, PVHD staff notes that as a result of the recent financial crisis and the heavy turnover of CFOs in the last 18 months, the FYE June 30, 2023 and 2024 audits just recently got underway and are not yet available. The most recent previous audit for FYE 2021/2022 does reflect an "unmodified" opinion:

*"In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Palo Verde Health Care District as of June 30, 2022 and 2021, and the changes in its net position and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America."*

The audit for FYE 2021 and 2022 also reflects adjustments made due to implementation of GASB 87 for reflecting lease revenues and expenditures, and lease liabilities.

The operating loss for FYE 2022 increased by $3,656,800 as compared to FYE 2021 as noted in the FYE 2021/2022 audit. This significant change is primarily attributable to the continued effects of the coronavirus pandemic on net patient revenue. However, the infusion of the one-time CARES Act Provider Relief Fund grant revenue allowed for an overall net surplus for FYE 2022 and resultant increase in Net Position. Additionally, the Paycheck Protection Program loan revenue from 2021 was eventually forgiven.

The PVHD reports that the significant Unrestricted Net Position (fund balance) at the end of FY 2022 of $13,678,899 included a total of $10.1 million in grants from the post

COVID-19 CARES Act. PVHD reports that much of these funds were expended in FYE 2023 and 2024.

The PVHD also reported in the FYE 2021/2022 Audit Management Discussion and Analysis (MD & A), as required by GASB, bad debts and charity care are reported as components of net patient revenues rather than as operating expenses. The PVHD experienced $2,211,329 in 2022 and $1,619,934 in 2021 provision for bad debt expense, and provided $76,734 and $153,955 in charity care for the years of 2022 and 2021, respectively. This is common for all medical/hospital service providers but clearly has exacerbated the situation at PVHD.

The financial performance of the PVHD as a whole is reflected in its current unaudited FYE June 30, 2024 financial statements developed by PVHD staff. PVHD notes completion of FY 23/24 with its Proprietary Fund reporting an <u>overall operating deficit</u> of $8,161,534, with a current Net Position of a negative $3,007,176 and an estimated Unrestricted Net Position of $5,154,358.

The projected status for FYE June 30, 2025 is reflected in its current 3rd Quarter report developed by PVHD staff. PVHD notes a projected completion of FY 24/25 with its Proprietary Fund reporting an <u>overall operating deficit of $4,347,984</u>, with a projected Net Position of a negative $7,355,161 and an estimated Unrestricted Net Position of $803,374.

This significant reduction in Unrestricted Net Position during FY 23/24 projected through FYE 2025 is a result of the deficit spending the PVHD has experienced in the last two years overall.

The primary revenue sources for PVHD are derived from charges for services and some non-operating income which take the form of:

- Reimbursement for allowable charges from Medicare, Medi-Cal, private insurance, and self-pay patients.
- Cost-based allowable reimbursements as component of the Critical Access Hospital designation by Medicare and Medi-Cal which reimburse the hospital based on actual costs incurred for allowable services.
- Monthly payments from managed care organizations (Medi-Cal managed care or Medicare Advantage) which support outpatient and preventive care services.
- Supplemental Payments Programs through Medi-Cal such as Intergovernmental Transfers (IGTs) and Quality Assurance Fee (QAF) provide additional funds to offset under-reimbursement from Medi-Cal.
- Non-operating revenue is derived from property tax, rentals, cafeteria, investment earnings, or leased Medi-Cal office space.

Some specific actions are being taken to reduce costs associated with the overall financial situation and the current suspension of services, the most significant being staff reductions:

24

- Implemented temporary furloughs, shift reductions, and/or elimination of per-diem and overtime hours for nurses, and radiology staff, and eliminated vacant positions, all as a result of fewer patients due to suspended services.
- Halted regular ordering of medical supplies not needed when elective procedures, inpatient care, or diagnostics are paused.
- Decreased spending on electricity, water, laundry/linen services, and environmental services due to fewer rooms and departments in use results in lower operating costs.

Two loan programs that the PVHD has entered into through the California Health Facilities Financing Authority (CHFFA) have assisted in allowing the hospital to provide the current services, however, cannot support the suspended services for the short or long term. The loans are:

- $8.5 million- Distressed Hospital Loan Program- this is a loan that was part of a $300 million dollar package for loans to rural distressed hospitals throughout the state. The PVHD has been utilizing proceeds from this loan since approved August 31, 2023. Payments on the loan had a 180-day grace period which has recently expired, however no loan repayments have been made at this time.

- $591,121 Non-designated Public Hospital Bridge Loan Program II bridge loan- The original loan amount of $600,000 has been slightly paid down however, payments have been suspended.

Following is the current status of these two loans as relayed by the PVHD management staff which has allowed these two loans to no longer remain in default.

As noted in the Executive Summary, it was announced that the state had assisted in funding for the hospital. According to PVHD staff, the state did not provide any additional direct funding for the hospital to maintain operations. The state did extend the Non-Designated Public Hospital Bridge Loan Program debt for $8.5 million for PVHD whereby a portion of this loan may be "forgiven" each year. Additionally, the state also deferred payments of the other outstanding state bridge loan of approximately $600,000 for three years, with potential "loan forgiveness." According to PVHD staff, these concessions, although helpful, do not resolve the current significant revenue and cash flow problem, even in the short-term. As a result of these actions, the PVHD reports that they are currently not in technical default on any debt obligations at this time.

It should also be noted that although deferrals for the two bridge loans were authorized by the state, the financial statements will still reflect the loans as long-term liabilities. However, from a cash flow perspective, the operational budget is unaffected. It is noted that at the end of FY 2024, the PVHD noted that Cash & Equivalents & net Accounts Receivable totaled $9,399,812. For FY 2024/2025, as of March 2025, these same accounts totaled $14,547,498. Additionally, for FY 2024/2025, PVHD has been drawing down portions of the $8.5 million loan to try and sustain the services still being provided while downsizing the staffing and support functions not required.

The PVHD District currently has no current debt service requirements due to the deferrals of the state loans, no other significant long-term liabilities, and no pension or OPEB liabilities.

Overall, the financial position of the PVHD is clearly considered very unstable at this time, with significant cash flow issues due to lack of ongoing revenues resulting in major service reductions and resultant expenditure reductions for staffing and other support services. The short-term outlook is an unknown as to ability to meet the goals of the 60-Day Emergency Plan implemented, and the revenue projections in the FY 2025/2026 budget. Additionally, the long-term outlook is also considered questionable unless sufficient long-term cash flow requirements for sustainability and eventual restoration of the suspended services can be achieved.

**The immediate need is a significant cash infusion to the PVHD to sustain the short term**, and eventually as noted, a stable long term revenue stream sufficient to support a fully operational and staffed hospital as is needed in the Blythe and Palo Verde region.

**Table III-2** on the following page provides a snapshot of key financial data from the last three fiscal years. An analysis of the data related to several key financial status and financial health indicators follows.

Due to the lack of audited information for FYE 2023/2024, unaudited end of year actual and/or projected financial information is provided in **Table III-2** for FYE 2024, and current projections for FYE 2025.

26

EXHIBIT 2, PAGE 43

**Table III-2- Financial Information – Palo Verde Healthcare District**

| Financial Information (2022 Actuals- Audited Financial Statements, 2024 & 2025 Unaudited End of Year and Projected Actuals) | | | |
|---|---|---|---|
| | FY 21/22 | FY 23/24 | FY 24/25 |
| Proprietary Fund Revenues/Transfers | $23,404,709 | $17,020,283 | $20,633,117 |
| Proprietary Fund Expenditures/Transfers | $21,203,727 | $25,181,817 | $24,981,101 |
| Proprietary Fund Surplus/(Deficit) | $2,200,982 | ($8,161,534) | ($4,347,984) |
| Capital Outlay | None | None | None |
| Debt Service Expenditures | None | None | None |
| Long-term Liabilities | $2,474,322 | $10,178,017 | N/A |
| Unrestricted Net Position (Fund Balance) | $13,678,899 | $5,154,358 | $803,374 |
| Restricted Net Position (Fund Balance) | None | None | None |
| Capital Assets (Net of Depreciation) | $3,416,650 | $6,267,684 | N/A |
| Unfunded Pension Liability | None | None | None |
| Unfunded OPEB Liability | None | None | None |
| Net Position | $16,713,366 | ($3,007,176) | ($7,355,161) |
| **Note-** N/A means Not Available as audited financial statements are unavailable, and amounts could not be estimated from unaudited end of year documents. None means not applicable to PVHD.<br>**Note-** Unrestricted Net Position (Fund Balance) for FY 23/24 & 24/25 is an estimate calculated from the FYE 2022 audit and the FY 23/24 & FY 24/25 unaudited revenue/expenditure estimates.<br>**Note-** Capital Outlay excludes maintenance items that are listed as operating expenditures.<br>**Note-** PVHD incurs no Pension or OPEB liabilities. | | | |

There are nine primary areas of criteria that have been utilized for this report to assess the present and future financial condition of any Special District's ability to provide efficient service operations as discussed following:

1. 3-Year Revenue/Expenditure Budget Trends
2. Ratios of Revenue Sources
3. Ratios of Reserves or Fund Balance to Annual Expenditures
4. Annual Debt Service Expenditures to Total Annual Expenditures
5. Net Position
6. Pension and OPEB Unfunded Liabilities
7. Capital Assets and Capital Improvement Plan
8. Fee Structure for Services Provided
9. Cost Avoidance Programs

***3 Year Revenue/Expenditure Budget Trends***

A trend analysis of revenues and expenditures provides a relatively quick snapshot of financial stability, and financial management of budgetary ebbs and flows over a short period of time.

For PVHD, the Proprietary Fund revenue is heavily dependent on patient charges for services, which in turn primarily comes from Medicare and Medi-Cal reimbursements along with insurance company payments making up 85-90% of the PVHD revenues. Patient co-payments make up a lesser portion, and grant revenue supplements when it is available. PVHD does receive a very small (less than one percent of annual budget) amount of general property tax. The trend currently reflects a downward trend of revenue based on the suspension of services recently implemented and resultant foregone revenue from those services.

### Ratios of Revenue Sources

Diversity of revenues is an indicator of any public agency's ability to withstand a major loss in one revenue stream without a significant impact to operations and services. Ideally, an agency should have 3-4 revenue streams that are as equally balanced as possible, however, that isn't always possible in some agencies.

As noted before, there is virtually no opportunity for diversification of revenues as the nature of the healthcare/hospital industry is driven by reimbursement rates for patient services set by Medicare, Medi-Cal and insurance companies, regardless of the actual cost of those services.

The PVHD does not maintain any Benefit Assessment or Special Assessment districts, and to create one for a special assessment to help fund operations would require a ballot measure under Prop 218. The only true opportunity for PVHD to gain additional revenue would be through a negotiated greater share of the property tax increment it currently receives.

### Ratio of Reserves or Fund Balance to Annual Expenditures

An indicator of the ability to absorb an unexpected loss of revenue in a given fiscal year is exhibited by the amount of unrestricted cash reserve or fund balance the service fund maintains in relation to the annual fund expenditures. A ratio of 30% or greater of fund balance/reserve to annual expenditures is generally considered an adequate ratio to maintain.

As PVHD has virtually no reserves at this point in time, there is no ratio to assess. Although maintaining reserves for emergency situations such as this is a paramount necessity, achieving capacity to build reserves over the years has been elusive for PVHD.

### Annual Debt Service Expenditures to Total Annual Expenditures

The ratio of annual debt service to total fund annual expenditures is an indicator of the District's ability to meet debt obligations in relation to service provision expenditures. Ideally, a ratio of 10% or less would reflect a very stable ratio.

28

PVHD has no bond or secured debt. Therefore no ratio to assess, which in turn is a positive aspect to overall financial stability. However, as noted, PVHD does currently maintain two state loan obligations totaling over $9 million which are currently in a deferred status.

### Net Position

An agency's "Net Position" as reported in its audited financial statements represents the amount by which assets (e.g., cash, capital assets, other assets) exceed liabilities (e.g., debts, unfunded pension and OPEB liabilities, other liabilities). A positive Net Position generally provides an indicator of financial soundness over the long-term. However, Net Position also includes the value of capital assets that may or may not be easily liquidated. Therefore, Net Position could potentially be skewed when viewing it in the aspect of liquidity.

PVHD's FY 21/22 ending net position was calculated by the auditors at $16,713,366 with $13,678,899 as unrestricted. As compared to annual revenues and expenditures, this is a significant amount of net position, indicating stability with its ongoing activities at that time. However, as noted over the recent past, this situation has significantly deteriorated for the foreseeable future.

The operating loss for 2022 increased by $3,656,800 as compared to 2021. This significant change is primarily attributable to the continued effects of the coronavirus pandemic on net patient revenue. However, the infusion of the Provider Relief Fund grant revenue allowed for an overall net surplus for FYE 2022 and resultant increase in Net Position.

Since then the Net Position for the PVHD has declined to a point where the current projection at the end of FY 2025 is estimated to be a negative $7,355,161, clearly a trend that is not sustainable for the PVHD to remain functional.

### Pension and OPEB Unfunded Liabilities

Unfunded pension and OPEB liabilities present one of the most serious fiscal challenges facing many public agencies in California today. When reporting required under Government Accounting Standards Board (GASB) Statement #68 was implemented, many public agencies were awakened by the reality of the long-term unfunded liability aspect of their respective pension and OPEB obligations.

The PVHD has no unfunded pension or OPEB liabilities.

The Palo Verde Hospital 401(a) Retirement Plan is a defined contribution money purchase retirement savings plan established to provide retirement benefits for all eligible employees. The hospital makes a matching contribution equal to 100 percent of eligible employee contributions, up to a maximum of three percent of employee compensation.

EXHIBIT 2, PAGE 46

Additionally, the PVHD does not provide post-employment benefits to retirees that would accrue an unfunded liability.

### *Capital Assets and Capital Improvement Program*

Capital assets must be adequately maintained and replaced over time and expanded as needed to accommodate future demand and respond to regulatory and technological changes. Depreciation typically spreads the life of a facility over time to calculate a depreciation amount for accounting purposes. The actual timing and amount of annual capital investments require detailed engineering analysis and will differ from the annual depreciation amount, although depreciation is a useful initial indicator of sustainable capital expenditures.

PVHD's capital assets include the hospital facilities comprising five separate buildings. As of June 30, 2022 the District had $10,603,257 in capital assets and $7,186,607 in accumulated depreciation, resulting in $3,416,650 net capital assets.

The PVHD does not utilize a formal Capital Improvement Program as it is not necessarily warranted for the infrastructure necessary for the services provided. However, there is a significant amount of structural modifications required to bring the hospital buildings up to current earthquake safety standards. The PVHD has struggled over the years to obtain funding for the required retrofits.

### *Fee Structure for Services Provided*

Most public agencies charge fees for various direct benefit services provided. Fees are required to reflect the general overall cost of a specific service provided to individual constituents.

The PVHD charges fees for all the individual services which are available. As the primary source of revenue for operating and maintaining the hospital, and providing the hospital services, a comprehensive internal fee schedule is maintained and is subject to change based on private insurance providers, and Medicare and Medi-Cal reimbursement rates.

It should be noted that reimbursement rates from the aforementioned providers generally are significantly less than the hospital charge rates. Co-payments by patients do not always get recovered creating a large volume of bad debt write offs.

### *Cost Avoidance Programs*

The PVHD notes that necessary cost cutting and cost avoidance measures are being implemented due to the current situation, however, no formal programs exist. As a regulated hospital subject to strict regulations regarding Medi-Cal services and pharmaceuticals provided to patients, the hospital is sometimes at the mercy of the suppliers.

EXHIBIT 2, PAGE 47

## DISADVANTAGED UNINCORPORATED COMMUNITIES

There are a total of nine DUCs within the PVHD boundaries. Three are associated with the City of Blythe, and six others are outside the City of Blythe SOI, however within the PVHD boundaries.

## STATUS OF ISSUES IDENTIFIED IN MOST RECENT MSR

The previous MSR completed in 2020 notes that PVHD was concerned about the future financial health of the hospital due to evolving reimbursement structures of federal, state and private payers, in particular uncertainty in Medicare payments.

## GOVERNMENT STRUCTURE ALTERNATIVES

There are various governmental structure alternatives that would be available for consideration if determined necessary to restore a fully functioning hospital. These alternatives are discussed in Section IV following below.

## RECOMMENDED MUNICIPAL SERVICE REVIEW DETERMINATIONS

Based on the information, issues, and analysis presented in this report, proposed MSR determinations pursuant to Government Code section 56430 are presented below for the LAFCO Commission's consideration:

### 1)   *Growth and Population Projections*

- The PVHD currently serves an estimated population of approximately 18,000 over a geographical area of approximately 1,022 square miles. The PVHD encompasses the City of Blythe, and the unincorporated communities of Mesa Verde, Ripley and Midland (currently an unpopulated ghost town).

- The general population is mainly low to middle income residents and a diversified ethnic mix, with the largest being Hispanic followed by Caucasian ethnicity.

- PVHD's service area most likely has some potential for growth most notably within the City of Blythe, however, recent history from the California Department of Finance reflects population stagnation mostly and a recent significant decrease in the City of Blythe population over the last few years. Some of the population decline was the recent closure of the Chuckawalla State Prison.

- Although the PVHD does not retain any land use planning and entitlement authority as those functions are reserved the cities, and the county for unincorporated areas, the PVHD must anticipate and forecast future demands.

31

EXHIBIT 2, PAGE 48

- Although the population of the City of Blythe has decreased fairly significantly recently, the PVHD must be prepared to anticipate that hospital services will see increased demands proportionate with any future population growth that may occur.

**2)   *Location and Characteristics of Disadvantaged Unincorporated Communities Within or Contiguous to the District's SOI.***

- There are nine disadvantaged unincorporated communities associated to the City of Blythe and/or within the PVHD boundaries.

**3)   *Present and Planned Capacity of Public Facilities and Adequacy of Public Services, Including Infrastructure Needs and Deficiencies Related to Disadvantaged Unincorporated Communities***

- The PVHD and the Palo Verde Hospital does not maintain the financial capacity for long-term provision of all services the hospital normally provides at this time.

- The PVHD is not meeting the level of service delivery the community not only desires, but is highly necessary for public health issues of a critical and non-critical nature.

- The hospital facility is in need of significant renovations for meeting current state earthquake standards.

- There are no additional deficiencies related to the nine DUCs identified within the PVHD SOI other than that already identified.

**4)   *Financial Ability of the District to Provide Services***

- Overall, the financial position of the PVHD is clearly considered very unstable at this time, with significant cash flow issues due to lack of ongoing revenues resulting in major service reductions and resultant expenditure reductions for staffing and other support services.

- The PVHD is in serious financial distress and does not have the financial ability to provide the full services of the Palo Verde Hospital.

- Available cash assets are nearly depleted as PVHD works to cut costs as quickly as possible to support cash flow requirements.

- Surgical services and in-patient services have been suspended forcing patients to travel approximately 100 miles to the closet California hospitals.

EXHIBIT 2, PAGE 49

- The PVHD Board of Directors has implemented a 60-Day Emergency Plan to address some of the short-term financial issues.

- **The immediate need is a significant cash infusion to the PVHD to sustain the short term**, and eventually, a stable long term revenue stream sufficient to support a fully operational and staffed hospital as is needed in the Blythe and Palo Verde region.

- The state did not provide any additional direct funding for the hospital to maintain operations. The state did extend the Non-Designated Public Hospital Bridge Loan Program debt for $8.5 million for PVHD whereby a portion of this loan may be "forgiven" each year. The state also deferred payments of one other outstanding state bridge loan of approximately $600,000 for three years. According to PVHD staff, these concessions, although helpful, do not resolve the current significant revenue and cash flow problem, even in the short-term.

- The PVHD is not in default on any debt obligations at this time.

- The PVHD normally conducts an independent audit bi-annually, however, PVHD staff notes that as a result of the recent financial crisis and the heavy turnover of CFOs in the last 18 months, the FYE June 30, 2023 and 2024 just recently got underway and is not yet available. The most recent previous audit for FYE June 30, 2021 and 2022 does reflect an "unmodified" opinion.

5) *Status of, Opportunities for Shared Facilities*

- There is no foreseeable opportunity for shared facilities as the hospital is unique to the type of services provided, and no other facility is within any reasonable distance to provide the services.

- Options are available for other governance or operational opportunities for the hospital.

6) *Accountability for Community Service Needs, Including Governmental Structure, and Operational Efficiencies.*

- The PVHD is governed by a five-member Board of Directors elected at large to four-year staggered terms by the registered voters within the PVHD boundaries.

- Hospital staffing is normally approximately 100-125 personnel, however during the suspension, layoffs and furloughs have resulted in a significant staffing reduction.

EXHIBIT 2, PAGE 50

- The Palo Verde Hospital website acts as the PVHD website and provides various types of information related to hospital services and activities, and for PVHD Board and administrative activities.

- The website lacks transparency from the aspect of searching for agendas, meeting minutes and financial information as the link to the page for such is at the very bottom of the home page where most residents would not notice. That link should be much more visible on the website.

- There is no direct email contact information listed for Board members, nor the PVHD CEO on the website. Phone and email contact information for most staff is provided, however very difficult to find.

- Meeting agendas with staff reports are posted on the website, however, no meeting minutes have been posted since March of 2025.

- Only the FY 2021/2022 bi-annual audit is provided on the website, and financial information is mostly limited to monthly reports. The current PVHD draft budget for FY 2025/26 is listed on the website.

- Several alternative government structure options should be considered if the current PVHD management structure cannot correct the long-term structural issues of maintain a fully operational hospital.

7)    ***Any Other Matter Related to Effective or Efficient Service Delivery, as Required by Commission Policy.***

- The Commission has concerns regarding the overall financial and management status of the PVHD, and particularly the Palo Verde Hospital.

- The Commission has requested an assessment of the PVHD's ability to return the hospital to full operational status long-term, and other options available for governance and operation of the hospital if necessary.

34

## IV.  OPTIONS & RECOMMENDATIONS

OPTIONS: As noted in the Executive Summary, the GOAL is to restore the Palo Verde Hospital to a fully functional facility providing all services as previously provided and ensure long-term financial sustainability. So how do we get there?

The following governmental and non-governmental options are available for consideration:

1) PVHD continue with implementing the Board of Directors adopted recovery plan.

    a. County of Riverside should exercise significant oversite of PVHD's implementation of the recovery plan.
    b. County of Riverside should provide all necessary assistance from the appropriate departments to ensure PVHD recovery plan is successful.
    c. Continue engagement by the Riverside University Health System for assistance in providing the current community support services.

2) Obtain state or County of Riverside funding to restore solvency, restore all suspended services, and clear all outstanding debt.

    a. Funding should be sufficient to effectuate these items and achieve sustainability for a minimum of one year or such time as appropriate cash flow over time has allowed the suspended services to be maintained.
    b. State and County of Riverside should continuously monitor the financial status and activities of PVHD to ensure appropriate actions required to restore services are undertaken and managed.
    c. Provide a permanent property tax augment sufficient to maintain a basic level of financial support.

3) Obtain commercial loan funding guaranteed by the state or the County of Riverside to restore solvency, restore all suspended services, and clear all outstanding debt.

    a. Funding should be sufficient to effectuate these items and achieve sustainability for a minimum of one year.
    b. State and County of Riverside should continuously monitor the financial status and activities of PVHD to ensure appropriate actions required to restore services are undertaken and managed.
    c. Any commercial funding should have a deferral component and a long-term payment term.

4) Lease the hospital to a public hospital or private hospital system.

    a. Lease agreement should return all suspended services within a given timeframe, and provide sufficient revenue to PVHD to cover any outstanding debt obligations and administrative functions of the PVHD.

    b. PVHD to provide direct oversite of the hospital services and financial status of the hospital.

5) Form a Joint Powers Authority with the PVHD, the City of Blythe and the County of Riverside.

    a. Allows for issuance of debt for operations and for the earthquake retrofit requirements.

    b. Provides the best representative partnership for oversite of the hospital operations for all PVHD constituents.

6) City of Blythe or the County of Riverside assume ownership and operation of the hospital & dissolve the PVHD

    a. LAFCO is authorized by statute to dissolve a special district.

    b. City of Blythe or the County of Riverside would have to have the capacity and financial ability to support absorbing the hospital.

7) Consolidate PVHD with Desert Healthcare District & dissolve the PVHD.

    a. LAFCO is authorized by statute to initiate a district consolidation and dissolution.

    b. DHD would have to have the capacity and financial ability to support absorbing the hospital.

8) Sell the Hospital to a private provider & dissolve the PVHD.

    c. LAFCO is authorized by statute to dissolve a special district.

9) File for Chapter 9 Bankruptcy proceedings.

OBSERVATIONS & RECOMMENDATIONS: From the perspective of the LAFCO Executive Officer, the following recommendations are provided for consideration of a combination of governmental and non-governmental options that would be considered the best options to less preferrable options at this time:

1) Options 1 & 2- The PVHD continue working to right-size the hospital given the current funding constraints and adjusting the recovery plan as appropriate. The County of Riverside and the state must engage in obtaining significant cash grant funding, in the short term to assist in the recovery, no new loans, grant funding only, and all current state loans should be immediately forgiven. **This combined Option should be considered the preferrable option.**

2) Option 5- Formation of a Joint Powers Authority with PVHD, the City of Blythe and the County of Riverside. Due to the benefits for obtaining funding, oversight abilities for representing all constituencies, and the multiple agency oversite of the

hospital operations, this is an appropriate Option to consider. **This Option has significant strengths from several perspectives and should be given strong consideration.**

3) Option 4- Lease the hospital to a public or private hospital provider under terms that the hospital would be allowed a certain period of time to return to a fully functional facility with all suspended services restored. Additionally, the lease terms should include sufficient funds for administrative oversite by PVHD. **This Option would essentially place full responsibility of restoring the hospital to a fully functional status and maintain a fully functional hospital for the long term.**

4) Option 3- Obtain commercial loan funding guaranteed by the state or the County of Riverside to restore solvency, restore all suspended services, and clear all outstanding debt. This option is not a strong option due to the nature of the lending market and the lending organizations qualification requirements, even with County of Riverside or state guarantees. **This Option should only be considered if the preferred Options are discarded.**

**5)** Options 6, 7 & 8 essentially dissolve the PVHD and assign successor agencies or a commercial hospital provider for restoring the suspended services and operating the hospital. **Although these are options that are available, they are not necessarily preferable.**

6) Option 9- Chapter 9 Bankruptcy- Clearly this would be a last resort and would not necessarily ever result in restoring the hospital to a fully functional facility. Additionally, it could result in the hospital closing altogether. **This Option is the worst-case Option and should only be considered if all else fails.**

EXHIBIT 2, PAGE 54

# ACRONYMS

| | |
|---|---|
| ARB | Accounting Research Bulletin |
| CARES Act | Coronavirus Aid, Relief, and Economic Security Act |
| CEQA | California Environmental Quality Act |
| CHFFA | California Health Facilities Financing Authority |
| CHNA | Community Healthcare Needs Assessment |
| CHIP | Community Healthcare Implementation Plan |
| CKH | Cortese-Knox-Hertzberg Reorganization Act of 2000 |
| DUC | Disadvantaged Unincorporated Community |
| FPPC | Fair Political Practices Commission |
| FTE | Full-Time Equivalent |
| FY | Fiscal Year |
| FYE | Fiscal Year Ending |
| GASB | Government Accounting Standards Board |
| IGT | Intergovernmental Transfer |
| LAFCO | Local Agency Formation Commission |
| MSR | Municipal Services Review |
| PVHA | Palo Verde Hospital Association |
| PVHD | Palo Verde Hospital District |
| OPEB | Other Post-Employment Benefits |
| QAF | Quality Assurance Fees |
| RUHA | Riverside University Health System |
| SOI | Sphere of Influence |

38

**EXHIBIT 3**



## PALO VERDE HEALTHCARE DISTRICT BOARD OF DIRECTORS
## STAFF REPORT

DATE: October 1, 2025

Item No. 5.A

SUBJECT:  DISCUSSION REGARDING ACTION BY THE RIVERSIDE COUNTY LOCAL
AGENCY FORMATION COMMISSION AND THE MUNICIPAL SERVICE REVIEW
- PALO VERDE HEALTHCARE DISTRICT

FROM: Sandra Anaya, Chief Executive Officer

BY: Michael Rose, Interim Chief Financial Officer

**SUMMARY:**

The Riverside County Local Area Formation Commission met on September 25, 2025, to discuss and deliberate the matter of the Municipal Service Review Public Hearing Report ("MSR Hearing Report"). The Commission voted to accept the Municipal Service Review Report and staff's recommendations. The Commission also voted to unite people to discuss a successor agency. The issue of dissolution will be discussed at a later meeting.

**STAFF REVIEW:**

The staff report has been reviewed by the Chief Executive Officer, Interim Chief Financial Officer and General Counsel.

**ATTACHMENT:**

The District's response to the Riverside County Local Area Formation Commission MSR Hearing Report.



Via Email (info@lafco.org)

September 25, 2025
Michael Vargas, Chair, City Member
Riverside Local Agency Formation Commission
6216 Brockton Avenue, Suite 111-B
Riverside, CA 92506

**PALO VERDE HEALTHCARE DISTRICT'S RESPONSE TO MUNICIPAL SERVICE REVIEW-PUBLIC HEARING REPORT**

Dear Mr. Vargas:

Much attention has been paid to Palo Verde Healthcare District ("PVHD" or "District") finances; particularly, since the end of 2024. However, as noted in the Municipal Service Review Public Hearing Report ("MSR Hearing Report"), released on September 3, 2025, the District has struggled financially for at least two decades or so. We are grateful to have received the Municipal Services Review and to engage in further dialogue with stakeholders to provide the best outcome for the hospital and its clinic.

**Part I. Background:**

Since mid-November 2024, the District engaged a team of professional consultants to assist them with determining an accurate assessment of the financial condition of the District which also identified various challenges surrounding its revenue cycle, issues with the audit obligations of the District, failure to file compliance reports timely, and addressing staffing levels, utilization of expensive outside professional medical staff and nurses, and governance issues, among other things.

In October 2024, the interim accounting manager who had been working for the District since January 2024, was promoted to the Controller position.  In January 2025, without a CFO, the Board promoted the Controller to the interim CFO position.  Beginning in early 2025, the financial team began alerting the Board publicly regarding the financial condition and fiscal responsibilities of the District.  It was evident that a budget had not been passed and there was no record of budget/finance discussions during open session of the Board for a considerable amount of time. In addition, discussions regarding the budget and finances had been discussed during closed sessions during much of 2024 which this team quickly worked to remediate.

Beginning in early 2025, District staff, including the Interim CFO, began reviewing agendas from January 2024 forward to determine when any fiscal matters were discussed in closed session and began efforts to identify all reports discussed in closed session and posted all such reports to the District's website. Furthermore, the new Board Secretary began the practice of including staff reports with every open session item to enhance transparency.  As the restructuring team-- management, staff and consultants--worked to assess the fiscal condition, access data in software programs no longer active at the District, and complete and correct reports, such

EXHIBIT 3, PAGE 57

information has been brought to the Board and the public, often utilizing detailed PowerPoint presentations and conducting workshops.

During this time, the District experienced several challenging events in 2025, including but not limited to a cyber incident and the seizure of approximately $2.89 million from its bank account to satisfy its line of credit on May 22, 2025. This served to exacerbate the already precarious financial situation the District was in from years of past decisions and long and protracted litigation over its health management information system.  The deteriorating financial condition of the District, and the additional economic stressors including COVID response, have culminated in the most dire of circumstances; the District found itself with insufficient cash on hand to continue operating as it had been.  Identifying and addressing legacy problems, attending to day-to-day operating and financial issues, and keeping the doors open, among other things, have equally been a strain on existing resources that are already spread thin.

Below, the District responds to the options and recommendations contained in the MSR Hearing Report. In an effort to avoid restating the recent history leading up to the current fiscal emergency this section will focus on the efforts management and staff have undertaken to not only deal with the day-to-day issues, but also, handle contractual issues, employment matters, budget preparation, drafting and implementing the stabilization plan, preparing for various Board and committee meetings, to continue collecting outstanding accounts receivable, improving the collection rate on receivables, while continuing to provide essential medical services to the community and making every effort to stretch the 14 days cash it had on hand as of June 6, 2025. As of September 23, 2025, the District now has 6 days cash on hand.

Despite the District's efforts, there are not sufficient funds to sustain the hospital.  The $4 million appropriation is necessary to balance the FY 25-26 budget, as discussed below, and will serve as bridge funding for the District to access funds under the Rural Health Transformation Program (RHTP), created by H.R. 1 – the One Big Beautiful Bill Act (OBBBA).  Under the RHTP, Congress appropriated a total of $50B ($10B/year for fiscal years 2026 through 2030) for the purposes of stabilizing and redesigning rural healthcare. Pursuant to the RHTP, we understand that interested States must apply to the Centers for Medicare & Medicaid Services (CMS) and, if approved, will receive annual funding allotments for five (5) years beginning in FY 2025-2026 (Oct 1, 2025). State applications must be approved or denied by December 31, 2025.  We believe that the District is precisely the type of rural health facility that the RHTP seeks to assist, given its risk of closure and its critical need by the community we serve.  Palo Verde Healthcare District operates the only rural emergency hospital within 100 miles and a rural health clinic.

Over the past 120 days, substantial progress has been made toward our recovery:

- The District took immediate action under the 60-Day plan to shutter inpatient services temporarily, reduce staffing, implement furloughs, and did not renew, or canceled contracts that were cost-prohibitive.  This is estimated to have resulted in cost savings of nearly $6.0M in the next fiscal year budget.

- Delinquent cost reports were successfully submitted on July 16, resulting in the release of $1.028 million from Noridian Healthcare related to Medicare claim withholds.

- Secured collection of more than $1.0 million in past due accounts receivable from the California Department of Corrections related to claims for incarcerated persons served by the Hospital within the past year.  We are working to pursue an additional $600,000 in aged AR.

- Successful recruitment of a highly skilled remote biller to handle patient accounts where the final claim has not been generated or sent due to incomplete coding, documentation gaps, or other issues preventing bill finalization. This effort is expected to generate approximately $600,000 in critical receivables promptly.

- Assembled a strong, seasoned professional support team, including an interim CFO, specialized hospital financial consultants, a recognized accounting firm specializing in healthcare audits, and expert legal firm with vast experience in public agency law.

- Active and constructive negotiations with creditors to restructure outstanding obligations, including vendor payments and deferrals are ongoing, thereby enhancing immediate fiscal stability.  Most critical service vendors have shown an overabundance of concern and care, as well as a willingness to work with the District due to its circumstances.

- Requests for proposals for new banking services have been obtained to bolster the Hospital with a potential partner for the future.

- Should the District receive emergency funding from the State, the District can pass a balanced budget for FY 2025-26.  This will allow additional time for future operational improvements in the next year, including improved revenue cycle management, evaluation of all service lines and billing charges, and continued reorganization to maximize the District census and prioritization of services to the community.

The $4.0 million in requested emergency funds will directly contribute to our recovery process in the following ways:

- $1.0 million will be used to sustain the already reduced hospital payroll and operational expenses for two additional months or more, ensuring uninterrupted healthcare access for our vulnerable populations and continued employment for nearly 80 people.

- $3.0 million will be strategically invested in the State of California's Intergovernmental Transfer (IGT) Program, resulting in an immediate return of approximately $6.476 million. These additional funds will be used to substantially reduce existing debt, stabilize hospital finances, and support the continuation of vital health services to the community.

- RHTP – The District will identify a team of professionals to immediately engage with HCAI, the agency identified to oversee the program and begin assembling a "readiness packet." The readiness packet will include, but not be limited to:

  o Needs and Baseline: service-area demographics, payer mix, access gaps, quality measures.

  o Project(s): goals, implementation plan (12–24 months), workforce plan, tech stack/cyber plan, partners/MOUs, sustainability beyond FY 2030.

  o Budget and Outcomes: total cost, RHTP request, match (if any required by California), milestones and metrics.

**Part II.  MSR Determinations:**

The Board of Directors of the Palo Verde Healthcare District offers the following responses to the MSR Hearing Report as follows:

**1) Growth and Population Projections**

**Findings:**

- Although the PVHD does not retain any land use planning and entitlement authority as those functions are reserved the cities, and the county for unincorporated areas, the PVHD must anticipate and forecast future demands.

- Although the population of the City of Blythe has decreased fairly significantly recently, the PVHD must be prepared to anticipate that hospital services will see increased demands proportionate with any future population growth that may occur.

**Response:** PVHD does not disagree with this finding.  PVHD has 25 beds which, based on current census, is six to seven times greater than are being utilized. Hospital administration does monitor the growth projections through the City and County who are primarily responsible for local and regional growth.  However, should any type of disaster or virus occur within the boundaries of the District, including at the Ironwood State Prison, these beds could fill quickly.

**2) Location and Characteristics of Disadvantaged Unincorporated Communities Within or Contiguous to the District's SOI.**

- There are nine disadvantaged unincorporated communities (DUCs) associated to the City of Blythe and/or within the PVHD boundaries.

**Response:** We agree with this determination.  Further information on these demographics could be gathered or clarified at a later stage to facilitate a more detailed analysis or discussion on its impacts to operations of the hospital and clinic.

**3) Present and Planned Capacity of Public Facilities and Adequacy of Public Services, Including Infrastructure Needs and Deficiencies Related to Disadvantaged Unincorporated Communities**

- The PVHD and the Palo Verde Hospital do not maintain the financial capacity for long-term provision of all services the hospital normally provides at this time.

- The PVHD is not meeting the level of service delivery the community not only desires but is highly necessary for public health issues of a critical and non-critical nature.

- The hospital facility is in need of significant renovations for meeting current state earthquake standards.

**Response:** PVHD does not disagree with these findings and in fact this is not new news.  The lack of funding for state mandated seismic retrofit was brought to the Board of Directors during the budget deliberations for FY 25-26 and in meetings with the City. The hospital administration has hired a team of financial consultants and an interim CFO that are working on a long-term plan to resume and expand services that are based on demand by the community and that also provide

4

cost recovery to the District sufficient to stay in business and meet quality standards. This long-term financial plan will include the costs to retrofit existing facilities or provide other options.

**4) Financial Ability of the District to Provide Services**

- Overall, the financial position of the PVHD is clearly considered very unstable at this time, with significant cash flow issues due to lack of ongoing revenues resulting in major service reductions and resultant expenditure reductions for staffing and other support services.

- The PVHD is in serious financial distress and does not have the financial ability to provide the full services of the Palo Verde Hospital.

- Available cash assets are nearly depleted as PVHD works to cut costs as quickly as possible to support cash flow requirements.

- Surgical services and in-patient services have been suspended forcing patients to travel approximately 100 miles to the closet California hospitals.

- The PVHD Board of Directors has implemented a 60-Day Emergency Plan to address some of the short-term financial issues.

- The immediate need is a significant cash infusion to the PVHD to sustain the short term, and eventually, a stable long-term revenue stream sufficient to support a fully operational and staffed hospital as is needed in the Blythe and Palo Verde region.

- The PVHD is not in default on any debt obligations at this time.

**Response:** PVHD does not disagree with these findings and in fact this is not new news. Management made these determinations during the past year and has reported each of these items publicly to the Board of Directors via staff reports and presentations on the financial condition of the District. Nine separate Board of Directors meetings have been held in the past five months to review the financial issues the District is facing.

The following technical corrections need to be made to the MSR information as presented below:

*"The state did extend the Non-Designated Public Hospital Bridge Loan Program debt for $8.5 million for PVHD whereby a portion of this loan may be "forgiven" each year."*

The state accepted the PVHD request for extension of the loan under the Distressed Hospital Loan Program which is $8.5 million. This loan may be forgiven annually dependent on the hospital's financial condition and ratios at the time of the annual application. The State of California extended the $600,000 Non-Designated Public Hospital Bridge Loan Program during the State's adoption of its FY25-26 budget. However, the Bridge Loan is not forgiven each year, but is in forbearance until December 17, 2027. We disagree that this does not resolve cash flow problems in the short term. The deferral option helps cash flow in the near term to allow the District time to rebuild its cash flow reserves that are sufficient to pay its obligations when due. It does not solve the District's operating cash flow issues where expenditures exceed revenues from its service lines or is not sufficient to cover overhead.

*"The PVHD normally conducts an independent audit bi-annually, however, PVHD staff notes that as a result of the recent financial crisis and the heavy turnover of CFOs in the last 18 months, the FYE June 30, 2023 and 2024 audits just recently got underway and are not yet available."*

5

The District has defaulted on its lease agreement with the County of Riverside and has also not paid certain of its vendors that are not deemed essential to current operations when the invoices become due.  These are being prioritized and paid under payment plans with other obligations of the District as cash becomes available.

The District does not conduct the annual independent audit.  The District hires outside auditors to conduct the independent audit and recently hired Baker Tilly (formerly Moss Adams) to perform those audits.  Audits of special districts in the State of California are required annually, not bi-annually. The District anticipates a restatement of the prior year audit in accounting areas including capital assets and prepaids.

**5) Status of Opportunities for Shared Facilities**

- There is no foreseeable opportunity for shared facilities as the hospital is unique to the type of services provided, and no other facility is within any reasonable distance to provide the services.

- Options are available for other governance or operational opportunities for the hospital.

**Response:** Currently, there are no other public hospitals or healthcare facilities within the city that facilitate shared services. However, PVHD management is actively exploring various opportunities to enhance operational efficiency through technological advancements and process improvements. This includes considering outsourcing options to maintain or even expand the level of services provided to the community. For instance, telehealth has become a widely adopted method for delivering healthcare services, especially for non-emergency cases, under specific circumstances. Implementing additional governance measures could be beneficial if accompanied by supplementary funding to help balance the budget. Nonetheless, increased governance alone is unlikely to resolve existing cash flow challenges or achieve a balanced budget. It is essential to adopt a comprehensive approach that combines operational improvements, technological integration, and strategic financial planning to ensure sustainable healthcare delivery within the city.

**6) Accountability for Community Service Needs, Including Governmental Structure, and Operational Efficiencies.**

- The PVHD is governed by a five-member Board of Directors elected at large to four- year staggered terms by the registered voters within the PVHD boundaries.
- Hospital staffing is normally approximately 120-125 personnel, however during the suspension, layoffs and furloughs have resulted in a significant staffing reduction.
- The Palo Verde Hospital website acts as the PVHD website and provides various types of information related to hospital services and activities, and for PVHD Board and administrative activities.
- The website lacks transparency from the aspect of searching for agendas, meeting minutes and financial information as the link to the page for such is at the very bottom of the home page where most residents would not notice. That link should be much more visible on the website.
- There is no direct email contact information listed for Board members, nor the PVHD CEO on the website. Phone and email contact information for most staff is provided however very difficult to find.
- Meeting agendas with staff reports are posted on the website, however, no meeting minutes have been posted since March of 2025 as the Board of Directors has been unable to approve the minutes from the last several Board meetings.

6

- Only the FY 2021 & 2022 bi-annual audit is provided on the website, and financial information is mostly limited to monthly reports. The current PVHD draft budget for FY 2025/26 is listed on the website.
- Several alternative government structure options should be considered if the current PVHD management structure and the Board of Directors cannot correct the long-term structural issues of maintaining a fully operational hospital.

**Finding:**

The website lacks transparency from the aspect of searching for agendas, meeting minutes and financial information as the link to the page for such is at the very bottom of the home page where most residents would not notice. That link should be much more visible on the website.

**Response:** The District acknowledges this finding. However, we disagree that the District has not been transparent. The functionality and ease of use of the website and transparency are two distinctly different issues that can be addressed. A redesigned website was launched on February 6, 2025; however, further updates and enhancements were delayed due to the cumulative impact of multiple catastrophic events, including the March 6, 2025 cyber incident, which required significant resources to combat those impacts now and into the future. Additionally, the hospital's financial condition resulted in staff reductions and cost controls, further limiting the District's capacity to implement additional planned improvements.

The District remains committed to enhancing transparency and accessibility. Updates to the website's functionality—including improved visibility and placement of agendas, meeting minutes, and financial information—and the cost to implement will be built into the District's long range financial plan. The District has also obtained external recommendations on optimizing and updating the website and intends to incorporate them as resources allow.

**Finding:**

There is no direct email contact information listed for Board members or the PVHD CEO on the website. While phone and email contact information for most staff is provided, it is very difficult to locate.

**Response:** The District acknowledges this finding and is committed to addressing the noted concerns. Planned website updates will include more visible and accessible contact information for the Board of Directors and the CEO, as well as improved navigation for locating staff contact details. These enhancements are intended to strengthen transparency.

**Finding:**

Meeting agendas with staff reports are posted on the website, however, no meeting minutes have been posted since March of 2025 as the Board of Directors has been unable to approve the minutes from the last several Board meetings.

**Response:** The District acknowledges this finding. The minutes for the meetings held on March 26, 2025; April 30, 2025; May 14, 2025; May 21, 2025; May 24, 2025; May 28, 2025; June 7, 2025; and June 25, 2025, were presented to the PVHD Board of Directors on July 30, 2025. At that time, the minutes were tabled to allow adequate time for Board review prior to adoption. The referenced minutes were subsequently approved at the August 27, 2025, Board meeting.

The backlog was due, in part, to the hybrid responsibilities of the Clerk of the Board, as well as furlough, which limited the ability to process and present minutes in a timely manner. Additional

committee and special meetings during this period further increased the workload and contributed to delays.

The District remains committed to ensuring Board meeting minutes are completed and posted promptly moving forward.

**Finding:**

The placement of the "Board Agendas & Minutes" link at the bottom of the homepage under the Quick Links heading appears to be inconsistent with Government Code section 54954.2. It is recommended that this issue be resolved by including a direct link to the most current Board agenda in a prominent location on the website homepage.

**Response:** The District acknowledges this finding. The District has taken the necessary measures to address the concern by adding a direct link to the most current Board agenda on the website homepage, ensuring compliance with Government Code section 54954.2 and improving accessibility for the public.

**Finding:**
The PVHD Board has reported that it meets every 4th Wednesday of the month at 6:00pm at the City of Blythe City Hall, City Council Chambers located at 235 N. Broadway, Blythe, CA 92225. However, past meetings have taken place at the Palo Verde Hospital - Conference Room at 5:00pm every 4th Wednesday of the month.

**Response:** The PVHD Board meets on the last Wednesday of each month at 6:00 p.m. at the City of Blythe City Hall, City Council Chambers, 235 N. Broadway, Blythe, CA 92225 pursuant to Resolution Number 2025-01, adopted and approved on January 29, 2025. The location of the Board meetings was changed to the City of Blythe Council Chambers in an effort to accommodate the public attending the meetings.  All meeting locations are also properly noticed in the agenda that is posted on the PVHD website in accordance with the Brown Act, posted at the Hospital and forwarded to all who have submitted a standing request for such notice.

**7) Any Other Matter Related to Effective or Efficient Service Delivery, as Required by Commission Policy.**

- The Commission has concerns regarding the overall financial and management status of the PVHD, and particularly the Palo Verde Hospital.

- The Commission has requested an assessment of the PVHD's ability to return the hospital to full operational status long-term, and other options available for governance and operation of the hospital if necessary.

**Response:** PVHD does not disagree.  In October 2024, the interim accounting manager who had been working for the District since January 2024, was promoted to the Controller position.  In January 2025, without a CFO, he was then appointed as the interim CFO.  In late-October 2024, the District also hired new legal counsel, a financial consultant was engaged in mid-November, to take a closer look at the organization's financial condition.  It quickly became apparent that there were overall financial deficiencies, weaknesses in internal controls, revenue cycle management issues, deficit spending, cash flow management issues and other operational issues within the organization.  The outcome of this work includes, but is not limited to, the many challenges and deliverables as outlined on pages 1-3 of this response to the MSR.

8

EXHIBIT 3, PAGE 64

The District received Board authority to and plans to file for chapter 9 protection (MSR option 9) in the immediate term, the outcome of which will include court confirmation of the District's Plan of Adjustment. A Plan of Adjustment in bankruptcy includes a long-range financial plan which has not existed in the past. "The Government Finance Officers Association (GFOA) emphasizes the importance of long-term financial planning for governments. They recommend that all governments prepare and maintain a long-term financial plan that projects revenues, expenses, financial position, and external factors for government operations at least five years into the future. Long-term financial planning is essential for capital planning, developing operating budgets, estimating revenue, and other planning processes. It helps governments communicate their long-term financial position to residents and other stakeholders, including rating agencies and bond investors" and will include the formal assessment necessary to maintain the hospital's sustainability into the future.  This action offers PVHD breathing room and cash necessary to evaluate the recommendations in this MSR report along with the financial condition assessment as presented in June 2025, the three year forecast, the FY25-26 draft operating budget, the FY25-26 draft capital plan, and the 60-Day Short Term emergency initiatives which, are publicly available on the District's website, and serve as the foundational documents to the development of a long-range financial plan.

**Part III.  MSR Options/Recommendations:**

1) PVHD continue with implementing the Board of Directors adopted recovery plan.

   a) County of Riverside should exercise significant oversite of PVHD's implementation of the recovery plan.
   b) County of Riverside should provide all necessary assistance from the appropriate departments to ensure PVHD recovery plan is successful.
   c) Continue engagement by the Riverside University Health System for assistance in providing the current community support services.

Response: The District concurs with the Executive Director of LAFCO that a combination of Option 1 and Option 2 may represent the most viable solution for the District's future. According to Becker's Hospital Review, approximately 759 rural hospitals across the United States face the threat of closure, with 26 located in California[1]. This situation underscores a nationwide crisis in rural healthcare, driven by systemic challenges that extend beyond individual institutions. The District has encountered difficulties related to staff turnover, ongoing litigation, and geographic limitations; however, these issues are symptomatic of broader structural problems within the healthcare industry. The traditional business model for rural hospitals is increasingly incompatible with the evolving healthcare landscape, including the Medicare managed care system. To address these challenges effectively, securing county and/or state funding would be essential. Such financial support could enable the District to balance its budget, restore essential services, develop revenue-generating service lines, and undertake necessary capital improvements. Nonetheless, these initiatives require time to implement, and with only six days of cash reserves remaining, immediate upfront funding is critical. This infusion of capital would provide the necessary liquidity to evaluate and pursue these strategic options thoroughly, ensuring the hospital's sustainability and continued service to the community.

[1] https://www.beckershospitalreview.com/finance/760-hospitals-at-risk-of-closure-state-by-state/

2) Obtain state or County of Riverside funding to restore solvency, restore all suspended services, and clear all outstanding debt.

   a) Funding should be sufficient to effectuate these items and achieve sustainability for a minimum of one year or such time as appropriate cash flow over time has allowed the suspended services to be maintained.

b) State and County of Riverside should continuously monitor the financial status and activities of PVHD to ensure appropriate actions required to restore services are undertaken and managed.
c) Provide a permanent property tax augment sufficient to maintain a basic level of financial support.

Response: Included with option 1 above.

3) Obtain commercial loan funding guaranteed by the state or the County of Riverside to restore solvency, restore all suspended services, and clear all outstanding debt.

   a) Funding should be sufficient to effectuate these items and achieve sustainability for a minimum of one year.
   b) State and County of Riverside should continuously monitor the financial status and activities of PVHD to ensure appropriate actions required to restore services are undertaken and managed.
   c) Any commercial funding should have a deferral component and a long-term payment term.

4) Lease the hospital to a public hospital or private hospital system.

   a) Lease agreement should return all suspended services within a given timeframe, and provide sufficient revenue to PVHD to cover any outstanding debt obligations and administrative functions of the PVHD.
   b) PVHD to provide direct oversite of the hospital services and financial status of the hospital.

Response: Option 4 & 8 have potential to restore services and outside funding. CHFFA disclosed to the District that any non-profit or governmental entity that would assume ownership would have the outstanding state debt assigned to the entity. Any for-profit entity that would assume ownership must be credit worthy to assume the debts from CHFFA. Any option for a management agreement or sale to an outside entity would require a vote from the public. The District does not have the financial resources to pay for an election, or for the time needed to obtain interest from management entities, vet offers, present to the board and the public, and then hold a vote. The hospital could likely close before this process is completed. CHFFA would have to be consulted regarding implications a lease may have on existing debt.

Furthermore, options 4 and 8 present potential pathways to restore services and secure outside funding for the hospital. With respect to a sale, a for-profit entity interested in purchasing the hospital and its clinic must demonstrate creditworthiness and offer a purchase price sufficient to pay off the CHFFA loans which total approximately $9.1 million, in addition to other outstanding, unpaid obligations to vendors and employees. A governmental entity assuming ownership would have to evaluate its creditworthiness and ability to assign and assume the debt through CHFFA approval process. Conversely, implementing a management agreement or selling the hospital to an external entity would necessitate a public vote in an election and have associated costs. The District lacks the financial resources to fund an election or the time required to attract management proposals, evaluate offers, present options to the Board and the public, and conduct the vote with only six days of cash on hand. Consequently, there is a significant risk that the hospital could close before these processes are completed, emphasizing the urgency of exploring feasible solutions promptly.

5) Form a Joint Powers Authority with the PVHD, the City of Blythe and the County of Riverside.

   a) Allows for issuance of debt for operations and for the earthquake retrofit requirements.
   b) Provides the best representative partnership for oversite of the hospital operations for all PVHD constituents.

10

Response: Options 5 & 6 are similar but also contain various limitations. First, it is not customary for cities within California to run and operate hospitals. The County runs a health department and other hospitals and would be in a better position but this would require the same as what the District has been asking for, a significant cash investment upfront to offer the hospital a chance to reorganize. The City would likely not be able to run a hospital without significant oversight and involvement from the County. The County would be starting over on the analysis of financial operations.

6) City of Blythe or the County of Riverside assume ownership and operation of the hospital & dissolve the PVHD

    a) LAFCO is authorized by statute to dissolve a special district.
    b) City of Blythe or the County of Riverside would have to have the capacity and financial ability to support absorbing the hospital.

Response: Included in option 5 above.

7) Consolidate PVHD with Desert Healthcare District & dissolve the PVHD.

    a) LAFCO is authorized by statute to initiate a district consolidation and dissolution.
    b) DHD would have to have the capacity and financial ability to support absorbing the hospital.

Response: We agree with LAFCO that this would not necessarily be the preferable option due to the geographical distance between the two hospitals. This also would likely require a vote from both the Desert Healthcare District constituents and the Palo Verde Healthcare District. There are many details that need to be worked through very quickly for this transaction to be completed. Something this complex is generally not feasible in the short-term. Thus this has the same timing challenges of options 4 & 8.

8) Sell the Hospital to a private provider & dissolve the PVHD.

    a) LAFCO is authorized by statute to dissolve a special district.

Response: The District has received an offer to purchase the hospital but the transaction as outlined was not sufficient to take into account the significant amount of outstanding obligations owed by the District and long-term demands on the seismic retrofit. A request for an updated proposal that address the long-term debt was requested. We are not opposed to soliciting offers under a formal request for proposal process to determine if the hospital could locate a credit worthy buyer. There are financial advisors that specialize in buying and selling hospitals that the District would need to engage. This would be time constrained as well due to the low cash position of the District.

9) File for Chapter 9 Bankruptcy proceedings.

    a) Clearly this would be a last resort and would not necessarily ever result in restoring the hospital to a fully functional facility. Additionally, it could result in the hospital closing altogether. **This Option is the worst-case Option and should only be considered if all else fails.**

Response: The District agrees with LAFCO's Executive Director that this option should only be considered if all else fails. The District has been working with the City, County, State and Federal government to secure other funding options to continue the operations of the District. None of the participating agencies offered financial support which was desperately needed. With only six days of cash on hand, option 9 is the most likely option without any commitment in hand for outside funding. We do not disagree that this should be used as the last resort option once all

11

other options have not materialized.  However, we have exhausted all measures in the past five months to balance the budget structurally through cost cutting and other measures.

Chapter 9 does offer advantages to the debtor as it works to restructure its operations.

"One of the most important and immediate advantages of a bankruptcy filing is the injunction prohibiting actions that might be taken by creditors or others against the municipality, its officers and its inhabitants. The automatic stay protects debtor against creditor lawsuits, foreclosures, attempts to terminate leases and even collection phone calls and emails. The benefit to a municipality with insufficient liquidity to pay its operating costs cannot be overstated. The injunction, known as the automatic stay, is triggered by the filing of the bankruptcy petition, and the protection in chapter 9 cases to officers and inhabitants goes beyond the protection afforded only to debtors in chapter 11 cases. This extended protection means that even if the municipality or other protected persons take or omit to take actions related to claims against the municipality that would otherwise subject them to sanctions or liability in court or before a regulatory body, those actions may not proceed without the permission of the bankruptcy court. The stay lasts during the pendency of the chapter 9 case, although the bankruptcy judge retains the right to modify or terminate the stay for cause shown."[2]

[2]Municipal Bankruptcy: Avoiding and Using Chapter 9 in Times of Fiscal Stress, SECOND EDITION, Chapter 2, page 7

Other benefits are that it provides more time, an independent arbiter, and ability to adjust the agency's debts for a fresh start.

As part of chapter 9 filing, if the City and/or County are willing to assist with the turnaround plan we would request funding of a Healthcare Management Consultant to support the existing turnaround team.  As of September 23, 2025, the District had 6 days cash on hand with the opportunity to collect approximately $4-5 million in outstanding receivables. We see opportunity to identify and engage a Healthcare Management Consultant with deep expertise in the healthcare revenue cycle management, necessary to remove log jams within accounts receivables billing and collections and to provide solutions to the Oracle Cerner system issues that exist.   Although this engagement would initially require an upfront investment of approximately $100,000, we believe that a qualified and successful Healthcare Management Consultant would more than pay for itself through the cash collections.  Furthermore, finance staff is already taxed and working at maximum capacity to get the backlog of monthly accounting, cash reconciliations, budget, compliance reporting, and audits completed.   The Healthcare Management Consultant would enable the staff to concentrate on day-to-day operations and to complete these long overdue items.  In addition, it would provide the cash collections necessary to continue through the reorganization under Chapter 9 to get a fresh start.

**Part IV.  Other Considerations:**

Governor Gavin Newsom officially declared the end of California's COVID-19 State of Emergency on February 28, 2023. This marked the conclusion of three years of emergency powers that began on March 4, 2020, when the pandemic first took hold in the state.

1. On January 10, 21, 2021, the physician who cared for patients in this setting expired from Covid-19. This physician provided care to patients admitted to the ICU setting. We no longer had a physician qualified to care for these patients. During that time, two medical doctors associated with this facility were either hospitalized or convalescing from Covid-related illnesses, although neither of them qualified to provide primary care for ICU patients.
2. Historically, those patients who needed higher level care were transferred to hospitals who needed specialty services, including those patients who needed neurological services, critical

EXHIBIT 3, PAGE 68

cardiac services, complicated orthopedic surgical procedures, or other specialty services not available at this facility, including pulmonology.

3. Staffing shortages for all areas of the hospital were accelerated due to the attrition of qualified staff who left to work in hospitals closer to their homes, and out of the area.
4. Staffing shortages resulted in the use of inflated cost of travel nurses who were utilized to staff the surgery, ED, and the Medical Surgical Unit.
5. Throughout that time, there was great difficulty in obtaining nurses from travel agencies who were sent to larger facilities in Palm Desert and throughout California.
6. The hospital accelerated efforts to obtain the needed nurses through collaboration with the California Department of Public Health and through administrative representatives through Congressman Ruiz' office to obtain travel nurses and/or to solicit support from other hospitals.
7. A physician from RUHS assisted this facility with the transfer of patients who needed complicated care due to Covid.
8. Direct care providers at the hospital were also on medical leave at various times during the three-year Covid period, and the hospital met all requirements mandated by the state to pay those health care workers while on leave, as well as to find the needed replacements to staff the hospital during that time.
9. During this current challenge, available resources are being used to staff the emergency department and provide ancillary services in support of providing care to that area.

Surgical Services

1. Prior to Covid, the hospital had only one surgeon available to provide surgical services for patients from all third-party payors. One surgeon associated with the facility for multiple years was restricted from performing surgery for Medicare and Medicaid patients or other state funded carriers.
2. A further decline in performing surgical services in the facility was a result of recommendations made throughout Covid, from multiple state mandates or other recommendations to suspend elective surgeries. This limited the source of operating income for many facilities, including this facility.
3. During the Covid period, the key surgeon for the facility was forced to take a leave from the facility due to legal ramifications that were imposed due to court mandates and imposed mandates from those proceedings.
4. Only one surgeon was left to work in the facility who also worked in the emergency department and had to be taken off that schedule to be able to take surgical call.
5. A Locum Tenens physician was used to provide the doctor who was left to perform surgery, to give the remaining surgeon time off during a 9-month period of surgical call.
6. Every effort was made to solicit the services of additional surgeons to take call.
7. Two surgeons from out of the area came on staff.
8. Meetings with El Centro proved fruitful in that a surgeon applied for staff privilege who brought inmates from both prisons to the facility to perform surgical procedures, through collaboration through prison officials, physicians, and administrative personnel. Both physicians, were out of the area, one from San Diego and one from Palm Desert.
9. One surgeon returned from his leave and the remaining surgeon performed a limited number of physicians due to his need to address personal family issues.
10. When decisions were made to reduce cost, the decision to suspend surgical services due to the limited number of surgeries and the financial outlay for retaining a surgeon on call had restrictions, n payer reimbursement.
11. Additionally, a managed care arena significantly reduces reimbursement and increases write-offs. As an example, $11,000 charges for a common surgical procedure for a hernia repair, at a 25% reimbursement rate would be a little over $2,000 dollars. The mesh alone for this procedure costs $1,000 to the facility. Reimbursement from a managed care state payer is

13

approximately $400.00 which does not cover the cost of all supplies, staff, and other related charges, for example, oxygen, drugs, laboratory, or radiological testing.
12. If there were high volume surgeries on a month-month basis, the potential for having an improved payer mix may be more feasible.
13. The hospital terminated a contract with a high paid Hospitalist [for inpatient services] since the cost outweighed the benefit, and that in part, led to the suspension of inpatient Medical-Surgical Services.

In a financial report submitted by the CFO to the board the following information is relevant:

In June of 2022, the financial report to the board addressed key utilization statistics:

| Indicator | FY 2020 | FY 2021 | Budget FY 2022 | FY 2022 Actual As of Dec 31, 2021 |
|---|---|---|---|---|
| Patient Days | 2435 | 2200 | 2200 | 778 |
| Average Daily Census | 6.7 | 5.16 | 5.16 | 4.27 |
| ED Visits | 9041 | 8580 | 8395 | 4943* |
| Surgical Cases | 575 | 585 | 585 | 219 |

*Includes all visit types within the emergency room*

In February of 2023, excerpts from the financial report address the following:

- Cash & Financing/ Debt The cash balance as of December 31, 2022 is approx. $8 million; reduced from approx. $13 million at the end of June 2022.

- All HHS Stimulus funds received from Phase 4 and ARP totaling $7.1 million were required to be recognized in fiscal year 2022 per discussions during the audit. These funds were used to cover the lost revenue.

- The district applied for a third CHFFA QIP Bridge Loans totaling $600K; due payable in 2 years from receipts at 0% interest. The liability will be reflected in the January 2023 financials. Revenue

- The financial impact on the district hospital continues to linger during the recovery post-pandemic period.

| Indicator | FY 2020 | FY2021 | FY 2022 | Jul-Dec 2022 |
|---|---|---|---|---|
| Patient Days | 2435 | 2200 | 1427 | 625 |
| ADC | 6.7 | 5.16 | 3.9 | 3.8 |
| ED Visits | 904 | 8580 | 8978 | 4447 |
| Surgical Cases | 575 | 585 | 375 | 110 |

**Part V.  Technical Corrections**

The following technical corrections should be made to the MSR report:

Page 5 - The report states PVHCD must anticipate and forecast future demands on services. This is part of the long-range financial plan currently being developed but growth has been stagnant.

EXHIBIT 3, PAGE 70

Page 7 - The report states that the District's website lacks transparency.  We agree that the website lacks organization and functionality, but the records have been posted and made available.  Transparency and functionality are different issues.

Page 7 -  report states that "[t]he Commission has requested an assessment of the PVHD's ability to return the hospital to full operational status long-term, and other options available for governance and operation of the hospital if necessary." Although the District does not recall having seen this request, the District has been and continues to be engaged in such an assessment.

Page 11 - In some places, "Medical" is shown as "Medi-Cal".

Page 11 – Authorized Services.  Report states that PVH owns and operates one 51 bed hospital in the City of Blythe.  Because the hospital was designated as a CAH effective 7/20/23, the hospital is now limited to only operating one 25 bed hospital.

Page 21 - The hospital has never suspended ICU beds, and therefore, we offer additional information that affects the acceptance of critical patients for receiving care in this service setting under Part IV, Other Considerations.

Page 21, last par. - PVHD has been unable to provide a structurally balanced budget for the current fiscal year 2025/26 and is operating under a continuing resolution.  Necessary resources to provide all services not under the suspension without additional funding from outside agencies is not possible.

Page 25 – Needs to be corrected as follows:

Two loan programs that the PVHD has entered into through the California Health Facilities Financing Authority (CHFFA) have assisted in allowing the hospital to provide the current services, however, cannot support the suspended services for the short or long term. The loans are:

▪    $8.5 million- Distressed Hospital Loan Program- this is a loan that was part of a $300 million dollar package for loans to rural distressed hospitals throughout the state. ~~The PVHD has been utilizing proceeds from this loan since approved August 31, 2023.~~ ~~Payments on the loan had a 180-day grace period which has recently expired, however no loan repayments have been made at this time.~~ **All proceeds from this loan have been used.  No payments have been drawn in FY 24-25 or 25-26.  The District applied for a one-year extension under the first phase of this program which has been approved by the Board and by the State.**

▪    $591,121 Non-designated Public Hospital Bridge Loan Program II bridge loan- The original loan amount of $600,000 ~~has been slightly paid down however, payments have been suspended.~~  This loan was in default until the State of California passed its FY 25-26 budget which provided a three-year forbearance of this loan.  Payments totaling $8,879 were made through the State's intercept agreement in the Medi-Cal check-write payments.

Following is the current status of these two loans as relayed by the PVHD management staff which has ~~allowed these two loans to no longer remain in~~ **cured the** default **on the Bridge loan**.

As noted in the Executive Summary, it was announced that the state had assisted in funding for the hospital. According to PVHD staff, the state did not provide any additional direct funding for the hospital to maintain operations. The state did extend the ~~Non-Designated Public Hospital Bridge Loan Program~~ **Distressed Hospital Loan Program** debt for $8.5 million for PVHD whereby a portion of this loan may be "forgiven" each year. Additionally, the state also deferred payments of the other outstanding state bridge loan of approximately $600,000 for three years.

15

According to PVHD staff, these concessions, although helpful, do not resolve the current significant revenue and cash flow problem, even in the short-term. As a result of these actions, the PVHD reports that they are currently not in technical default on any debt obligations at this time.

~~Additionally, for FY 2024/2025, PVHD has been drawing down portions of the $8.5 million loan to try and sustain the services still being provided while downsizing the staffing and support functions not required.~~ **The last approximately $1 million of the distressed hospital loan was  spent during November and December 2024.**

Page 25 - A recommendation from LAFCO indicates that the California Health Facilities Financing Association ("CHFFA") loans "should be immediately forgiven". CHFFA has confirmed to the District that the Distressed Hospital Loan Program will only be forgiven in annual increments between 2026 – 2030. The forgiveness will be based on the hospital's financial ratios and quarterly information provided to CHFFA.

Page 25 - The report was incorrect in stating the Bridge Loan was $8.5million.  The bridge loan is $600,00.  The Distressed Hospital Loan is $8.5million.

Page 25 - The Bridge Loan will be in forbearance until December 17, 2027, upon completion of filings with CHFFA.

Page 25 - The LAFCO report states that the District is not in default on any of its obligations. The District has been in default on the Bridge Loan since December 17, 2024. The loan is non-interest bearing and is secured by 20% of Medi-Cal "checkwrite". This default was removed due to recent legislations passed by the State.

Page 26 – The report state the District currently has no current debt service requirements due to deferrals of the State loans, no other significant long-term liabilities and no pension or OPEB liabilities.  This needs to be corrected:

- The District has suspended capital lease payments to the County of Riverside for the office building across the street from the hospital since October 2024. In the FY 25-26 Draft Budget, the District proposed to vacate the property and is currently in the process of moving out of the office building.  These obligations need to be accrued.
- The District has paid time off balances that also are accrued a portion of which may be in long-term liabilities including the implementation of GASB 101.

[Remainder of the page intentionally left blank.]

Page 28 - The report mentions that there is a downward trend of revenue due to the suspension of services [assumed to be referring to the 60-Day Plan].  However, the report does not take into account the resulting positive budgetary impact when considering the reduction in associated costs.  Overall, the net impacts from the shuttering of the Med-Surg and Surgical departments and allowable cost reductions due to those changes, the net impact was an overall increase to net income.

Thank you for your consideration.

Respectfully and with gratitude,

/s/ Carmela Garnica

Carmela Garnica, President, Board of Directors
Palo Verde Healthcare District
Phone: (760) *922-2582*

/s/ Sandy Anaya

Sandy Anaya, CEO
Palo Verde Healthcare District
Phone: (562) 572-6971

cc:    Supervisor V. Mauel Perez, Riverside County Board of Supervisors (sahernan@rivco.org)
       Michael Vargas, Chair, City Member, Riverside Local Agency Formation Commission
           (mayor@cityofperris.org )
       Melissa R. Cushman, Esq., Deputy County Counsel (mcushman@rivco.org)

EXHIBIT 3, PAGE 73



**PALO VERDE HEALTHCARE DISTRICT BOARD OF DIRECTORS
STAFF REPORT**

DATE: October 1, 2025                                    Item No. 5.B

SUBJECT: CHAPTER 9 UPDATE

FROM: Sandra Anaya, Chief Executive Officer

BY: Michael Rose, Interim Chief Financial Officer, and Lena Wade, Esq.

---

**SUMMARY:**

Efforts to obtain financial assistance from the City, County, State and Federal government and to secure other funding options to continue the operations of the District have not been successful. The District has fewer than five (5) days of cash on hand.  The District has exhausted all measures in the past five months to balance the budget structurally through cost cutting and other measures.

"One of the most important and immediate advantages of a bankruptcy filing is the injunction prohibiting actions that might be taken by creditors or others against the municipality, its officers and its inhabitants. The automatic stay protects debtor against creditor lawsuits, foreclosures, attempts to terminate leases and even collection phone calls and emails. The benefit to a municipality with insufficient liquidity to pay its operating costs cannot be overstated. The injunction, known as the automatic stay, is triggered by the filing of the bankruptcy petition, and the protection in chapter 9 cases to officers and inhabitants goes beyond the protection afforded only to debtors in chapter 11 cases. This extended protection means that even if the municipality or other protected persons take or omit to take actions related to claims against the municipality that would otherwise subject them to sanctions or liability in court or before a regulatory body, those actions may not proceed without the permission of the bankruptcy court. The stay lasts during the pendency of the chapter 9 case, although the bankruptcy judge retains the right to modify or terminate the stay for cause shown."[1]

There will be an update regarding chapter 9 bankruptcy.

---

[1] Municipal Bankruptcy: Avoiding and Using Chapter 9 in Times of Fiscal Stress, SECOND EDITION, Chapter 2, page 7.

**EXHIBIT 4**

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  DEVAN DE LOS REYES, #355913
   ddelosreyes@marshackhays.com
4  MARSHACK HAYS WOOD LLP
   870 Roosevelt
5  Irvine, California 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Debtor,
   PALO VERDE HEALTHCARE DISTRICT

8                    UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

10

11   In re                                   Case No. 6:25-bk-17084-SY

12                                           Chapter 9

13   PALO VERDE HEALTHCARE DISTRICT,          NOTICE OF COMMENCEMENT OF
                                              CHAPTER 9 CASE
14               Debtor.

15

16

17          TO ALL CREDITORS OF PALO VERDE HEALTHCARE DISTRICT AKA THE PALO

18   VERDE HOSPITAL, AND TO ALL PARTIES-IN-INTEREST:

19          **COMMENCEMENT OF CHAPTER 9 CASE.** On September 30, 2025, Palo Verde

20   Healthcare District ("PVHD" or "Debtor"), a special hospital district which operates the Palo Verde

21   Hospital located at 250 N. First Street, Blythe, California, filed a petition to commence a bankruptcy

22   case under Chapter 9 of Title 11 of the United States Code ("Bankruptcy Code") in the United States

23   Bankruptcy Court for the Central District of California, Riverside Division ("Court"). The United

24   States Court of Appeals for the Ninth Circuit has designated the Honorable Scott H. Yun, United

25   States Bankruptcy Judge, to preside over the bankruptcy case. All documents filed with the Court are

26   available for inspection via the PACER system, which may be accessed on a subscription basis at the

27   following internet address: https://pacer.uscourts.gov. **PLEASE TAKE NOTICE THAT** the Court

28   conducts its hearings in-person in the courtroom and any party wishing to appear other than in

                                            1
                        NOTICE OF COMMENCEMENT OF CHAPTER 9 CASE

1  person are required to comply with the Court's telephonic appearance procedures which are

2  available online at the Court's website: https://www.cacb.uscourts.gov/judges/honorable-scott-h-yun

3       **AUTOMATIC STAY.** Pursuant to 11 U.S.C. §§ 362 & 922, the filing of PVHD's Chapter 9

4  petition operates as a stay, applicable to all entities, of all prohibited acts described in such sections,

5  including but not limited to: the commencement or continuation of a judicial, administrative, or other

6  action or proceeding against an officer or inhabitant of the Debtor, the enforcement of any judgment,

7  any act to create, perfect, or enforce any lien against property of the Debtor, and any act to collect,

8  assess, or recover a claim against the Debtor.

9       **PURPOSE OF THE CHAPTER 9 FILING.** Chapter 9 of the Bankruptcy Code provides a

10  means for a municipality authorized under applicable state law to propose a plan of readjustment of

11  debts under 11 U.S.C. § 941. In a Chapter 9 case, pursuant to 11 U.S.C. § 904, the jurisdiction and

12  powers of the bankruptcy court are limited such that the Court lacks jurisdiction to interfere with:

13  any of the political or government powers of the Debtor, any of the property or revenues of the

14  Debtor, or the Debtor's use or enjoyment of any income-producing property.

15       **DEADLINE FOR OBJECTIONS TO ELIGIBILITY AND ENTRY OF AN ORDER**

16  **FOR RELIEF.** Appended to the Debtor's Chapter 9 bankruptcy petition was a one-page statement

17  of eligibility under 11 U.S.C. § 109(c), which is reproduced at the end of this Notice. Objections to

18  the Chapter 9 petition and the Debtor's eligibility under Chapter 9 must be filed by a party with

19  standing no later than 11:59 p.m. Pacific Prevailing Time on November 7, 2025. If you are an

20  authorized user of the Court's CM/ECF electronic filing system, any such objection shall be filed via

21  the Court's CM/ECF system. If you are not an authorized user of the Court's CM/ECF system, a

22  written objection must be sent by means calculated to reach the Court no later than 5:00 p.m. Pacific

23  Prevailing Time on November 7, 2025 at the following address: The Clerk of the United States

24  Bankruptcy Court for the Central District of California, Riverside Division, 3420 Twelfth Street,

25  Riverside California 92501-3819, to ensure it is filed by the deadline, and any filing may also be

26  filed in-person at the intake counter. Any objection shall state the facts and legal authorities relied

27  upon in support thereof, and shall be served on or before the same date on the following partiers: (1)

28  the United States Trustee's Office; (2) the Debtor; (3) and the Debtor's attorneys.

**HEARING ON OBJECTIONS.** If no objection is timely filed, the filing of the petition shall be deemed an order for relief under Chapter 9 of the Bankruptcy Code, and this Notice shall be deemed notice of such order for relief. If a timely objection is filed and served, the Court has set a status conference on December 3, 2025, at 1:30 p.m. Pacific Prevailing Time at the United States Bankruptcy Court for the Central District of California, Riverside Division, 3420 Twelfth Street, Courtroom 302, Riverside, California 92301-3819. At such time, if objections have been filed, the Court may consider and resolve, as it deems appropriate, any fully-briefed objections to eligibility. The Court will also consider setting other dates in its discretion. **FAILURE TO TILE A TIMELY WRITTEN OPPOSITION WILL RESULT IN THE ORDER FOR RELIEF BEING ENTERED.**

Dated: _____, 2025          MARSHACK HAYS WOOD LLP


                                       By: _____
                                           D. EDWARD HAYS
                                           TINHO MANG
                                           DEVAN DE LOS REYES
                                           Attorneys for Debtor
                                           PALO VERDE HEALTHCARE DISTRICT


*This notice should not be construed as, and does not constitute, legal advice of any kind. The law firm of Marshack Hays Wood LLP only represents the Debtor and cannot give unrepresented parties any legal advice. Marshack Hays Wood LLP will not represent other entities, companies, or individuals in connection with this bankruptcy case. If you require legal advice, or need assistance preparing any legal paperwork, you must hire an attorney to represent you before the Court.*

EXHIBIT 4, PAGE 77

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **MOTION FOR ORDER SETTING CASE STATUS CONFERENCE; APPROVING FORM AND SUFFICIENCY OF NOTICE UNDER 11 U.S.C. § 923; AND SETTING DEADLINE TO FILE OBJECTIONS TO PETITION, AND PROCEDURES FOR DETERMINATION OF ELIGIBILITY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SANDRA J. ANAYA AND D. EDWARD HAYS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 2, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTOR PALO VERDE HEALTHCARE DISTRICT:** Devan De los Reyes ddelosreyes@marshackhays.com, ddelosreyes@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR PALO VERDE HEALTHCARE DISTRICT:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR PALO VERDE HEALTHCARE DISTRICT:** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@marshackhays.com
- **UNITED STATES TRUSTEE:** United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **October 2, 2025** , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**DEBTOR** –
Palo Verde Healthcare District
250 N. 1st Street
Blythe, CA 92225-1702

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 2, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PRESIDING JUDGE'S COPY – VIA OVERNIGHT MAIL**
HONORABLE SCOTT H. YUN
UNITED STATES BANKRUPTCY COURT
3420 TWELFTH STREET, SUITE 345
RIVERSIDE, CA 92501-3819

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 2, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**3. SERVED VIA EMAIL:** CONTINUED:

**20 LARGEST CREDITOR – VIA EMAIL**
PERFORMANT HEALTHCARE SERVICES

**20 LARGEST CREDITOR – VIA EMAIL**
HEALTHCARE IT LEADERS

**20 LARGEST CREDITOR – VIA EMAIL**
MEDICAL SOLUTIONS

**20 LARGEST CREDITOR – VIA EMAIL**
COUNTY OF RIVERSIDE/EDA

**20 LARGEST CREDITOR – VIA EMAIL**
SCA CONSULTING

**20 LARGEST CREDITOR – VIA EMAIL**
ALTERA DIGITAL HEALTHCARE

**20 LARGEST CREDITOR – VIA EMAIL**
CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES DISPROPORTIONATE SHARE HOSPITAL UNIT - SB1100

**20 LARGEST CREDITOR – VIA EMAIL**
GEBBS HEALTHCARE SOLUTIONS

**20 LARGEST CREDITOR – VIA EMAIL**
BETA HEALTHCARE GROUP

**20 LARGEST CREDITOR – VIA EMAIL**
ORACLE HEALTH

**20 LARGEST CREDITOR – VIA EMAIL**
WIPFLI

**20 LARGEST CREDITOR – VIA EMAIL**
DEPARTMENT OF HEALTHCARE ACCESS & INFORMATION

**20 LARGEST CREDITOR – VIA EMAIL**
DR. HOSSAIN SAHLOLBEI

**20 LARGEST CREDITOR – VIA EMAIL**
THE GOOD LIFE MEDSTAFF

**20 LARGEST CREDITOR – VIA EMAIL**
AYA HEALTHCARE

**20 LARGEST CREDITOR – VIA EMAIL**
SIEMENS HEALTHCARE DIAGNOSTICS

**20 LARGEST CREDITOR – VIA EMAIL**
RADIOLOGY REPORTS

**20 LARGEST CREDITOR – VIA EMAIL**
HAEMONETICS CORPORATION

**20 LARGEST CREDITOR – VIA EMAIL**
CERTIFIED NURSING REGISTRY

**20 LARGEST CREDITOR – VIA EMAIL**
DR. MOSTAFA RAHIMI

**UTILITY PROVIDER**
FRONTIER

**UTILITY PROVIDER**
BLUE TECH SERVICES

**UTILITY PROVIDER**
TRL SYSTEMS

**UTILITY PROVIDER**
ALSCO

**UTILITY PROVIDER**
AT&T

**UTILITY PROVIDER**
EGOLDFAX

**UTILITY PROVIDER**
GRANITE TELECOMMUNICATIONS

**UTILITY PROVIDER**
MR. PEST CONTROL

**UTILITY PROVIDER**
POWER PLUS

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**